## MICHAEL CANNATA ET AL. *v.* DEPARTMENT OF ENVIRONMENTAL PROTECTION ET AL.
### (13877)

PETERS, C. J., SHEA, CALLAHAN, COVELLO and HULL, Js.

Argued May 10—decision released July 17, 1990

*Elliott B. Pollack,* with whom were *Michael Kurs* and, on the brief, *Lori J. Kremidas,* for the appellants (plaintiffs).

*Janet P. Brooks,* assistant attorney general, with whom, on the brief, were *Clarine Nardi Riddle,* attorney general, and *Joseph Rubin,* assistant attorney general, for the appellee (named defendant).

*Katherine H. Robinson,* for the appellee (defendant Connecticut Fund for the Environment, Inc.).

SHEA, J. The dispositive issue in this appeal is whether a court or an administrative agency should decide in the first instance whether an agency has jurisdiction over a particular subject matter. The plaintiffs, Michael and Deborah Cannata, brought an appeal pursuant to General Statutes § 4-183[1] of the Uniform Administrative Procedure Act (UAPA) to the Superior Court from a decision by the named defendant, the department of environmental protection (DEP), requiring them to file an application for a permit to cut trees on their property within the stream channel encroachment lines established pursuant to General Statutes

---

[1] General Statutes (Rev. to 1987) § 4-183 (a) provides: "APPEAL TO SUPERIOR COURT. (a) A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision in a contested case is entitled to judicial review by way of appeal under this chapter, provided, in case of conflict between this chapter and federal statutes or regulations relating to limitations of periods of time, procedures for filing appeals or jurisdiction or venue of any court or tribunal, such federal provisions shall prevail. A preliminary, procedural or intermediate agency action or ruling is immediately reviewable if review of the final agency decision would not provide an adequate remedy."

§ 22a-342.[2] In the appeal, they challenged the authority of DEP to issue such an order in view of the exemption for agricultural uses in General Statutes § 22a-349.[3] The trial court, sua sponte, dismissed the appeal for lack of subject matter jurisdiction on the ground that the plaintiffs had failed to exhaust their administrative remedies. From that decision the plaintiffs appealed. We affirm the judgment of dismissal.

The following facts, found by the named defendant's hearing officer and the trial court, are undisputed. The plaintiffs own two hundred acres of land in Cromwell bordering the Connecticut River. In 1988, the plaintiffs sought permits from the commissioner of environmental protection (commissioner), pursuant to § 22a-342, for permission to develop a portion of their land for a subdivision and golf course within the stream channel encroachment lines. On June 21, 1988, the commissioner granted the plaintiffs permission to develop a subdivision but denied with prejudice permission to

---

[2] General Statutes § 22a-342 provides: "ESTABLISHMENT OF STREAM CHANNEL ENCROACHMENT LINES. PERMITS FOR ENCROACHMENTS, REQUIRED FINDINGS. The commissioner shall establish, along any tidal or inland waterway or flood-prone area considered for stream clearance, channel improvement or any form of flood control or flood alleviation measure, lines beyond which, in the direction of the waterway or flood-prone area, no obstruction or encroachment shall be placed by any person, firm or corporation, public or private, unless authorized by said commissioner. The commissioner shall issue or deny permits upon applications for establishing such encroachments based upon his findings of the effect of such proposed encroachments upon the flood-carrying and water storage capacity of the waterways and flood plains, flood heights, hazards to life and property, and the protection and preservation of the natural resources and ecosystems of the state, including but not limited to ground and surface water, animal, plant and aquatic life, nutrient exchange, and energy flow, with due consideration given to the results of similar encroachments constructed along the reach of waterway."

[3] General Statutes § 22a-349 provides: "PERMITTED AGRICULTURAL USE. The provisions of sections 22a-342 to 22a-348, inclusive, shall not be deemed to restrict agricultural or farming uses of lands located within the stream channel encroachment lines including the building of fences, provided this section shall not apply to farm buildings and farm structures."

construct a golf course. The construction of a golf course would have involved cutting the flood plain forest within the stream channel encroachment lines. The commissioner's decision stated, inter alia, that, since 1976, flood plain forests have been recognized as critical habitats and that this particular flood plain forest is a resource of "special ecological significance, both in itself and through its function as a buffer to the adjacent Dead Man's Swamp, another critical habitat."

On July 5, 1988, the plaintiffs notified the commissioner that they intended to cut trees within the stream channel encroachment lines in order to expand their agricultural crop land. On July 8, 1988, the commissioner issued, ex parte, a cease and desist order, directing the plaintiffs to stop cutting trees because they had failed to apply for a permit as provided in § 22a-342.[4]

On July 18 and 19, 1988, a hearing was held, pursuant to General Statutes § 22a-7,[5] before a hearing officer designated by the commissioner to determine whether the cease and desist order should be upheld. The Con-

[4] On July 14, 1988, the commissioner issued an amended cease and desist order to Leander Crete and Crele Construction Corporation. Crete, president of the Crele Construction Corporation, had a contract with the plaintiffs to cut trees on the plaintiffs' property within the stream channel encroachment lines.

On December 19, 1988, the court entered a default judgment against Crete and his corporation for failure to appear.

[5] General Statutes § 22a-7 provides: "CEASE AND DESIST ORDER, SUBSEQUENT HEARING. The commissioner, whenever he finds after investigation that any person is causing, engaging in or maintaining, or is about to cause, engage in or maintain, any condition or activity which, in his judgment, will result in or is likely to result in imminent and substantial damage to the environment, or to public health within the jurisdiction of the commissioner under the provisions of chapters 440, 442, 445, 446a, 446c, 446d and 446k or whenever he finds after investigation that there is a violation of the terms and conditions of a permit issued by him that is in his judgment substantial and continuous and it appears prejudicial to the interests of the people of the state to delay action until an opportunity for a hearing can be provided, may, without prior hearing, issue a cease and desist order in writing to such person to discontinue, abate or alleviate such con-

necticut Fund for the Environment, Inc., intervened in support of the cease and desist order. On July 29, 1988, the hearing officer issued a final decision upholding the order until the plaintiffs filed a permit application and DEP had taken final action on it. From this decision, the plaintiffs appealed to the Superior Court pursuant to § 4-183.

In their complaint, the plaintiffs alleged that the hearing officer had incorrectly determined that a proposed agricultural use of land within the stream channel encroachment lines was subject to the permit process and that the final decision violated the plaintiffs' federal and state constitutional rights.[6] The trial court, sua sponte, found that it lacked jurisdiction because the plaintiffs had failed to comply with the exhaustion requirement of § 4-183 and dismissed the appeal. Upon a motion for rehearing and reconsideration, the court granted a rehearing but denied relief. The court's memorandum of decision on the motion stated that the plaintiffs had failed to show that the administrative remedy

dition or activity. Upon receipt of such order such person shall immediately discontinue, abate or alleviate or shall refrain from causing, engaging in or maintaining such condition or activity. The commissioner shall, within ten days of such order, hold a hearing to provide the person an opportunity to be heard and show that such condition does not exist. Such order shall remain in effect until ten days after the hearing within which time a new decision based on the hearing shall be made.''

[6] The plaintiffs alleged several constitutional violations, including the violation of their due process rights by the commissioner in the appointment of a DEP employee to rule on the propriety of the DEP's cease and desist order, DEP's unconstitutional usurpation of legislative power by requiring a permit for an exempt agricultural use, and the unconstitutional taking of their property without compensation. The plaintiffs have failed to brief these issues on appeal. We have generally held that issues not briefed are deemed abandoned and not reviewed by this court. *Cersosimo* v. *Cersosimo,* 188 Conn. 385, 396 n.17, 449 A.2d 1026 (1982); *Rodriguez* v. *Mallory Battery Co.,* 188 Conn. 145, 149, 448 A.2d 829 (1982). The plaintiffs' claim that, because they have raised several constitutional issues, they are exempt from the exhaustion requirement, therefore, will not be reviewed by this court.

was futile or inadequate and to present any reason why they were not subject to the requirements of § 22a-342. This appeal followed.

I

The plaintiffs argue that the trial court erred in dismissing their appeal for failure to exhaust an administrative remedy because the applicability of the remedy, i.e., filing an application for a permit, raises a jurisdictional issue, thereby creating an exception to the exhaustion requirement. The plaintiffs maintain that, because the hearing officer found the proposed use of their land within the stream channel encroachment lines to be an agricultural use, they are exempt from regulation in accordance with General Statutes § 22a-349, and DEP is without jurisdiction to require them to file an application for a permit. In support of their claim they point to *Aaron* v. *Conservation Commission*, 178 Conn. 173, 179, 422 A.2d 290 (1979) (*Aaron I*), where we stated that "resort to administrative agency procedures will not be required when the claims sought to be litigated are jurisdictional."[7]

---

[7] In *Aaron* v. *Conservation Commission*, 178 Conn. 173, 422 A.2d 290 (1979) (*Aaron I*), the plaintiff instituted a declaratory judgment action, challenging the jurisdiction of the conservation commission of the town of Redding and attacking the validity of certain of its regulations that required the plaintiff to obtain an inland wetlands permit to install a septic system. The trial court declined to entertain the action on the ground that the issues the plaintiff sought to have litigated could be more appropriately resolved by applying to the commission for an inland wetlands permit and, if unsuccessful, by taking an appeal from such denial pursuant to General Statutes (Rev. to 1979) § 22a-43. This court reversed the trial court, proclaiming that "declaratory judgment proceedings are appropriate for determining jurisdictional issues or questions concerning the validity of the regulations of an administrative agency, while questions concerning the correctness of an agency's decision in a particular case or of the sufficiency of the evidence can properly be resolved only by appeal." Id., 178. The court also relied on the alternative ground that "exhaustion of administrative remedies will not be required when the remedies available are futile or inadequate," concluding that "there is some question as to whether the plaintiff's claims could properly be litigated by way of appeal because of the rule that

According to the plaintiffs, therefore, the appeal was properly brought, pursuant to General Statutes § 4-183, to the Superior Court to determine the jurisdictional authority of DEP concerning the applicability of §§ 22a-342 and 22a-349. We conclude, however, that, under the circumstances of this case, the administrative agency must first be given the opportunity to determine its own jurisdiction.

The right to appeal a decision of an administrative agency exists only under statutory authority. As previously mentioned, the plaintiff in this case has appealed pursuant to § 4-183 of the UAPA. A plaintiff seeking a right to appeal under § 4-183 must exhaust all administrative remedies. " ' "It is a settled principle of administrative law that, if an adequate administrative remedy exists, it must be exhausted before the Superior Court will obtain jurisdiction to act in the matter. *Connecticut Life & Health Ins. Guaranty Assn.* v. *Jackson,* 173

a party who seeks some advantage under a statute or ordinance, such as a permit or a variance, is precluded from subsequently attacking the validity of the statute or ordinance." Id., 179.

In *Greater Bridgeport Transit District* v. *Local Union 1336,* 211 Conn. 436, 439, 559 A.2d 1113 (1989), a suit for an injunction, however, we endorsed the " 'general rule that an administrative agency may and must determine whether it has jurisdiction in a particular situation. When a particular statute authorizes an administrative agency to act in a particular situation it necessarily confers upon such agency authority to determine whether the situation is such as to authorize the agency to act—that is, to determine the coverage of the statute—and this question need not, and in fact cannot, be initially decided by a court.' 2 Am. Jur. 2d, Administrative Law § 332 and cases therein cited."

Although it may be possible to distinguish the two cases on the basis of differences in the relief sought and the availability of an administrative remedy, we regard *Greater Bridgeport Transit District* as implicitly overruling *Aaron I* with respect to the absence of an exhaustion requirement for the determination of an agency's jurisdiction when an adequate administrative remedy is available. In any event, the plaintiffs misplace their reliance upon *Aaron I,* because we do not have before us a declaratory judgment action but an administrative appeal pursuant to General Statutes § 4-183, which expressly requires exhaustion of "all administrative remedies available within the agency" as a prerequisite to an appeal.

Conn. 352, 358–59, 377 A.2d 1099 (1977) . . . ." ' *Cummings* v. *Tripp,* 204 Conn. 67, 75, 527 A.2d 1230 (1987)." *Greater Bridgeport Transit District* v. *Local Union 1336,* 211 Conn. 436, 438, 559 A.2d 1113 (1989); *Pet* v. *Department of Health Services,* 207 Conn. 346, 350–51, 542 A.2d 672 (1988). "We have frequently held that where a statute has established a procedure to redress a particular wrong a person must follow the specified remedy and may not institute a proceeding that might have been permissible in the absence of such a statutory procedure." *Norwich* v. *Lebanon,* 200 Conn. 697, 708, 513 A.2d 77 (1986). "Because the exhaustion doctrine implicates subject matter jurisdiction, we must decide as a threshold matter"; *Concerned Citizens of Sterling* v. *Sterling,* 204 Conn. 551, 556, 529 A.2d 666 (1987); whether the trial court erred in dismissing the plaintiffs' claim because they failed to exhaust their administrative remedies.

In *Greater Bridgeport Transit District* v. *Local Union 1336,* supra, 439, we stated that "[w]here there is in place a mechanism for adequate judicial review, such as that contained in § 4-183, '[i]t is [the] general rule that an administrative agency may and must determine whether it has jurisdiction in a particular situation. When a particular statute authorizes an administrative agency to act in a particular situation it necessarily confers upon such agency authority to determine whether the situation is such as to authorize the agency to act—that is, to determine the coverage of the statute—and this question need not, and in fact cannot, be initially decided by a court.' 2 Am. Jur. 2d, Administrative Law § 332 and cases therein cited." The requirement of exhaustion of remedies in the context of agency jurisdiction finds further support in several federal cases holding that an agency initially should decide its own jurisdiction. *Rogers* v. *Bennett,* 873 F.2d 1387, 1392–93 (11th Cir. 1989); *Accion Social de Puerto*

*Rico, Inc.* v. *Viera Perez,* 831 F.2d 365, 371 (1st Cir. 1987); *Avoyelles Sportsmen's League, Inc.* v. *Marsh,* 715 F.2d 897, 918–19 (5th Cir. 1983); *Deltona Corporation* v. *Alexander,* 682 F.2d 888, 893 (11th Cir. 1982); *Shawnee Coal Co.* v. *Andrus,* 661 F.2d 1083, 1093 (6th Cir. 1981); *West* v. *Bergland,* 611 F.2d 710, 719 (8th Cir. 1979), cert. denied, 449 U.S. 821, 101 S. Ct. 79, 66 L. Ed. 2d 23 (1980); see also 5 J. Stein, G. Mitchell & B. Mezines, Administrative Law § 49.02 [3]; B. Schwartz, Administrative Law (2d Ed.) § 8.34.

In *Deltona Corporation* v. *Alexander,* supra, for example, the plaintiff, Deltona Corporation, purchased approximately 10,300 acres of land in Marco Island, Florida, a large section of which it proceeded to develop by construction. Several years later, after a significant change in federal and state laws regarding the granting of certain permits, the plaintiff sought to obtain the necessary permits for the remainder of Marco Island. The district engineer of the Army Corps of Engineers denied the permits for construction on two undeveloped areas of the island because of the potential destruction of wetlands, bay bottom, fish and wildlife. This decision was subsequently upheld by the chief of engineers. The plaintiff filed suit in federal court for review of the Corps' denial of permits and the court granted summary judgment for the Corps, from which the plaintiff appealed.

On appeal, the plaintiff sought to challenge the extent of the Corps' jurisdiction over Marco Island. The Eleventh Circuit Court of Appeals, in upholding the District Court's decision, concluded that summary judgment for the Corps was proper because the plaintiff had failed to exhaust its administrative remedies. The court stated that because the Corps has not had an opportunity to rule on its jurisdiction, "[w]hatever controversy exists . . . may well be settled by an administrative determination of how much of Deltona's property constitutes

wetlands, thus avoiding unnecessary judicial intervention." Id., 893. The court, in referring to the policies supporting the exhaustion requirement, stated that "committing this determination to the Corps in the first instance permits complete development of the factual record, utilizes the agency's expertise in this technical area, and encourages the development of uniform standards to guide future decisions." Id., 893–94.

We have similarly stated that the "doctrine of exhaustion of [administrative] remedies fosters an orderly process of administrative adjudication and judicial review, offering a reviewing court the benefit of the agency's findings and conclusions. It relieves courts of the burden of prematurely deciding questions that, entrusted to an agency, may receive a satisfactory administrative disposition and avoid the need for judicial review." *Owner-Operators Independent Drivers Assn. of America* v. *State*, 209 Conn. 679, 691–92, 553 A.2d 1104 (1989). In *McKart* v. *United States*, 395 U.S. 185, 194–95, 89 S. Ct. 1657, 23 L. Ed. 2d 194 (1969), the United States Supreme Court stated that "judicial review may be hindered by the failure of the litigant to allow the agency to make a factual record, or to exercise discretion or apply its expertise. . . . [N]otions of administrative autonomy require that the agency be given a chance to discover and correct its own errors. . . . [I]t is possible that frequent and deliberate flouting of administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedures."

## II

The commissioner of environmental protection has been given broad powers with reference to the protection of lakes, rivers and streams within the state. General Statutes §§ 22a-337 through 22a-364. The commissioner is responsible for regulating flood con-

trol, erosion and pollution on all navigable streams and rivers. In 1955, the General Assembly, in response to the disastrous floods of that year, enacted legislation permitting the water resource commission to establish stream channel encroachment lines. See *Vartelas* v. *Water Resources Commission,* 146 Conn. 650, 653–54, 153 A.2d 822 (1959).

On May 1, 1963, after a public hearing, the water resources commission established stream channel encroachment lines in Cromwell on certain property bordering the river pursuant to General Statutes (Cum. Sup. 1961) § 25-3 (c). The location of these lines was based on the boundaries of the area "which would be inundated by a flood similar in size to one or more recorded floods which have caused extensive damages." General Statutes § 22a-343. Section 22a-342 provides that no obstruction or encroachment is to be placed beyond any stream channel encroachment line "in the direction of the waterway or flood-prone area" unless authorized by the commissioner. After consideration of the factors set out in § 22a-342, the commissioner is authorized to issue or deny permits upon applications for placing obstructions or encroachments within the lines. The statutory scheme, however, permits agricultural or farming uses of land within the stream channel encroachment lines. Specifically, § 22a-349 provides: "The provisions of sections 22a-342 to 22a-348, inclusive, shall not be deemed to restrict agricultural or farming uses . . . ." This appeal involves the applicability of §§ 22a-342 and 22a-349 to the plaintiffs' proposed use of their property.

The jurisdictional authority of the commissioner in this case depends on the applicability of § 22a-342. The commissioner asserts that § 22a-342 applies to the plaintiffs' proposed use of their property. On the other hand, the plaintiffs assert that § 22a-349 prohibits the commissioner from applying § 22a-342 and subjecting

them to the permit process. As previously mentioned, § 22a-342 allows the commissioner to issue or deny permits to individuals seeking to place an "obstruction or encroachment" within the stream channel encroachment lines. Therefore, the commissioner's jurisdictional authority to require the plaintiffs to obtain permits is limited to the placement of "obstructions or encroachments" within the lines.

Whether the plaintiffs' proposed activity within the stream channel encroachment lines is a placement of an "obstruction or encroachment" requiring them to obtain a permit pursuant to § 22a-342 and whether the plaintiffs' proposed use of their land is an "agricultural or farming" use within § 22a-349 are factual determinations best left to the commissioner. This is precisely the type of situation that calls for agency expertise. Relegating these determinations to the commissioner in the first instance will provide a complete record containing the commissioner's interpretation of the relevant statutory provisions for judicial review. "The agency, like a trial court, is created for the purpose of applying a statute in the first instance. Accordingly, it is normally desirable to let the agency develop the necessary factual background upon which decisions should be based. And since agency decisions are frequently of a discretionary nature or require expertise, the agency should be given the first chance to exercise that discretion or to apply that expertise." *McKart* v. *United States,* supra, 193–94.[8]

---

[8] Several of the federal courts that have addressed the issue of exhaustion of administrative remedies in the context of an agency's jurisdiction have analyzed it by looking at the following three factors in determining whether to require exhaustion: (1) the extent of injury from pursuit of an administrative remedy; (2) clarity of the agency's jurisdiction; and (3) involvement of specialized administrative understanding in the question of jurisdiction. *Rogers* v. *Bennett,* 873 F.2d 1187 (11th Cir. 1989); *Accion Social de Puerto Rico, Inc.* v. *Viera Perez,* 831 F.2d 365 (1st Cir. 1987); *SEC* v. *G. C. George Securities, Inc.,* 637 F.2d 685 (9th Cir. 1981); *Shawnee*

The plaintiffs contend, however, that DEP lacks jurisdiction over their proposed use of their land, and that they are therefore not subject to the permit process. They argue, accordingly, that requiring them to "undergo that very procedure is not a remedy." The plaintiffs, therefore, assert that there were no adequate remedies available to exhaust and thus their appeal pursuant to § 4-183 was proper. We do not agree.

Like all other judicial doctrines, there are exceptions to the rule of exhaustion; however, " 'we have recognized such exceptions only infrequently and only for narrowly defined purposes.' *LaCroix* v. *Board of Education,* 199 Conn. 70, 79, 505 A.2d 1233 (1986). Among the exceptions is where recourse to the administrative remedy would be futile or inadequate; *Greenwich* v. *Liquor Control Commission,* 191 Conn. 528, 541–42, 469 A.2d 382 (1983) . . . ." *Pet* v. *Department of Health Services,* supra, 353. An administrative remedy is futile or inadequate if the agency is without the authority to grant the requested relief.

The underlying relief the plaintiffs claim to seek is to expand their agricultural crop land. In order to do this, the plaintiffs maintain, it is necessary for them to cut trees within the stream channel encroachment lines. By requiring the plaintiffs to submit to the permit process under § 22a-342, the commissioner would be able to determine whether the plaintiffs' proposed activity would be an obstruction or encroachment

*Coal Co.* v. *Andrus,* 661 F.2d 1083 (6th Cir. 1981); 4 K. Davis, Administrative Law (2d Ed. 1983) § 26:5. Although these factors may be used in analyzing this type of issue, we have recognized the often quoted rule stated in *McKart* v. *United States,* 395 U.S. 185, 193, 89 S. Ct. 1657, 23 L. Ed. 2d 194 (1969), that the " '[a]pplication of the [exhaustion] doctrine to specific cases requires an understanding of its purposes and of the particular administrative scheme involved' and that the doctrine should not be 'applied blindly in every case.' " *Cummings* v. *Tripp,* 204 Conn. 67, 78–79, 527 A.2d 1230 (1987); *Greenwich* v. *Liquor Control Commission,* 191 Conn. 528, 541, 469 A.2d 382 (1983).

within the stream channel encroachment lines and whether the plaintiffs' proposed use of their land is a permitted use within § 22a-349.

If the commissioner determines that she has jurisdiction, i.e., the plaintiffs' proposed activity would be an obstruction or encroachment, and that the plaintiffs' proposed use is one exempted by § 22a-349, the plaintiffs would then be allowed to cut trees on their property without a permit. This procedure is in accord with *Aaron* v. *Conservation Commission,* 183 Conn. 532, 547, 441 A.2d 30 (1981) (*Aaron II*), where we stated: "[T]he administrative requirement that one apply to the commission in order to determine if his application is one for an exempt use . . . is, in and of itself, valid and is administratively necessary for the commission to discharge its function under the enabling statutes. . . . [T]here should be an administrative determination of any claimed exemption."

If the commissioner determines, however, that she has jurisdiction over the plaintiffs' proposed activity and that the plaintiffs' proposed use is not within § 22a-349, then she must decide whether to issue or deny a permit. Issuance of a permit would provide the plaintiffs with the relief they seek. If the commissioner denies the plaintiffs a permit, they can then pursue an appeal to the Superior Court pursuant to § 4-183 challenging the commissioner's jurisdiction and her decision denying them a permit. Therefore, the permit process under § 22a-342 is an adequate remedy available for the requested relief and is within the agency's authority to grant.[9]

---

[9] In addition to obtaining a permit, the plaintiffs have available as a remedy the filing of a petition for a declaratory ruling with the commissioner. General Statutes (Rev. to 1987) § 4-176 provides in part that an "agency may, in its discretion, issue declaratory rulings as to the applicability of any statutory provision . . . ." An adverse ruling by the agency is appealable under General Statutes § 4-183 and the failure of an agency to issue a ruling per-

## III

The plaintiffs contend further, however, that the hearing held by the commissioner's hearing officer regarding the validity of the cease and desist order and the finding that the order was to remain in effect until the plaintiffs obtained a permit were determinations that DEP had jurisdiction over a use described in § 22a-349. The plaintiffs maintain, therefore, that in accordance with § 4-175 their appeal pursuant to § 4-183 was proper. The plaintiffs point to that part of General Statutes (Rev. to 1987) § 4-176 that provides: "If the agency issues an adverse ruling, the remedy for an aggrieved person shall be an action for declaratory judgment under section 4-175 *unless the agency conducted a hearing pursuant to sections 4-177 and 4-178 for the purpose of finding facts as a basis for such ruling,* in which case the remedy for an aggrieved person shall be an appeal pursuant to section 4-183." (Emphasis added.)

The commissioner's hearing officer conducted a hearing pursuant to General Statutes § 22a-7 to determine the validity of the cease and desist order. Section 22a-7 authorizes the commissioner "whenever he finds after investigation that any person is causing, engaging in or maintaining, or is about to cause, engage in or maintain, any condition or activity which, in his judgment,

mits an action for a declaratory judgment under General Statutes § 4-175. *Commission on Hospitals & Health Care* v. *Stamford Hospital,* 208 Conn. 663, 672, 546 A.2d 257 (1988). The plaintiffs can file with the commissioner a petition for a declaratory ruling requesting the commissioner to determine the applicability of General Statutes §§ 22a-342 and 22a-349 to the proposed use of their land within the stream channel encroachment lines. See *Connecticut Assn. of Boards of Education, Inc.* v. *Shedd,* 197 Conn. 554, 560–62, 499 A.2d 797 (1985). If "the available administrative procedure . . . provide[s] the plaintiffs with a mechanism for attaining the remedy that they seek"; *Concerned Citizens of Sterling* v. *Sterling,* 204 Conn. 551, 560 n.10, 529 A.2d 666 (1987); they must exhaust that remedy.

will result in or is likely to result in imminent and substantial damage to the environment . . . may, without prior hearing, issue a cease and desist order . . . to such person to discontinue . . . such condition or activity." Section 22a-7 further provides that within ten days of such order the commissioner shall "hold a hearing to provide the person an opportunity to be heard and show that such condition does not exist." The hearing officer's jurisdictional authority is, therefore, limited to finding whether a person's activity will result in or is likely to result in imminent and substantial damage to the environment.

A hearing held pursuant to § 22a-7 is mandatory and conducted for the limited purpose of determining whether a person's activity is dangerous to the environment. In contrast, a hearing held pursuant to §§ 4-177 and 4-178 for the purpose of finding facts for a declaratory ruling is discretionary and is ordinarily initiated by the filing of a petition requesting the commissioner to issue a ruling concerning the applicability of any statutory provision, regulation or order of the agency. The plaintiffs did not file a petition with the commissioner seeking a ruling as to whether she had jurisdiction to require them to obtain a permit for a proposed use described in § 22a-349. Therefore, we conclude that the hearing held pursuant to § 22a-7 was not equivalent to a hearing conducted for the purpose of a declaratory ruling giving rise to an appeal pursuant to § 4-183.[10] Accordingly, we reject the contention of the

---

[10] In the present case, the plaintiffs are requesting that we interpret General Statutes § 4-176 to allow the substitution of findings made at a hearing conducted pursuant to General Statutes § 22a-7 for those that should be made at a hearing conducted for the purpose of finding facts for a declaratory ruling. We will not construe § 4-176 to permit the substitution of a hearing conducted in accordance with § 22a-7 for the statutory requirement of a hearing conducted for the purpose of finding facts for a declaratory ruling. See *Liberty Mobile Home Sales, Inc.* v. *Cassidy,* 6 Conn. App. 723, 726, 507 A.2d 499 (1986).

plaintiffs that DEP has already adjudicated the juris-
dictional issue by virtue of the decision appealed from,
which simply leaves the cease and desist order in effect
until a final determination has been made in a permit
application proceeding as to whether their proposed
activities are allowed by § 22a-349. Postponing the reso-
lution of this issue until the plaintiffs have applied for
a permit rather than deciding it within the confines of
a § 22a-7 hearing was well within the discretion of the
DEP hearing officer.[11]

We conclude that judicial intervention, before the
commissioner has finally determined whether she has
jurisdiction over the plaintiffs' proposed use of their
land, is unwarranted because of the availability of an
adequate administrative remedy and the failure of the

[11] The plaintiffs further contend that the cutting of trees within wetlands
is a use permitted by General Statutes § 22a-40 (a) (1) and therefore is not
subject to the commissioner's cease and desist authority under General Stat-
utes § 22a-7. The plaintiffs assert that § 22a-40 (a) (1) is applicable to the
plaintiffs' land because the hearing officer found that the plaintiffs' prop-
erty was a wetland. They specifically point to the hearing officer's finding
that "[t]he land proposed for cutting of the floodplain forest and expan-
sion of agriculture crop land within the stream channel encroachment lines
consists of poorly drained alluvial soils which are the characteristics defin-
ing wetlands by soil under state statutes." They assert that, based on this
finding, the exemption provided by § 22a-40 (a) (1) for "clear cutting of tim-
ber" for agricultural purposes deprived the commissioner of authority to
issue the cease and desist order pursuant to § 22a-7.

The commissioner issued the cease and desist order "for work within
established stream channel encroachment lines" and failure to obtain a per-
mit in accordance with General Statutes § 22a-342. The commissioner did
not issue the order on the ground that the plaintiffs' proposed use of their
property would damage the wetlands. It is unclear from the hearing offi-
cer's finding whether the plaintiffs' property is a wetland as defined in Gen-
eral Statutes § 22a-38 (15). The hearing officer found only that the property
contained soil that had some characteristics of wetlands. Whether the plain-
tiffs' property is a wetland as defined in § 22a-38 (15), whether the plain-
tiffs' proposed use falls within § 22-40 (a) (1) permitted operations and uses
in wetlands, and the applicability of General Statutes §§ 22a-342 and 22a-349
to wetlands within stream channel encroachment lines are factual deter-
minations involving statutory interpretations that are better left to the com-
missioner in the first instance.

plaintiffs to demonstrate that they will suffer any substantial harm if they are required to exhaust this remedy.[12] The trial court properly dismissed the appeal.

The judgment is affirmed.

In this opinion the other justices concurred.

[12] Notably, the plaintiffs have failed to allege that they would be harmed if they were to file an application for a permit with the commissioner. "Absent a showing of immediate and irreparable harm, a party who is aggrieved by a decision of an administrative agency may not institute an independent action for the purpose of bypassing the UAPA appeal process." *Harwinton Drilling & Engineering Co.* v. *Public Utilities Control Authority,* 188 Conn. 90, 98, 448 A.2d 210 (1982).