******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

SUSAN YORGENSEN, INLAND WETLANDS
ENFORCEMENT OFFICER OF THE TOWN
OF EASTFORD *v.* DARLENE A.
CHAPDELAINE ET AL.

DARLENE A. CHAPDELAINE *v.* TOWN OF
EASTFORD ET AL.
(AC 35464)

DiPentima, C. J., and Gruendel and Lavery, Js.

*Argued November 20, 2013—officially released May 6, 2014*

(Appeal from Superior Court, judicial district of
Hartford, Land Use Litigation Docket, Berger, J.)

*Darlene A. Chapdelaine*, self-represented, the appellant (named defendant in the first case, plaintiff in the second case).

*Eric Knapp*, for the appellees (plaintiff in the first case, defendants in the second case).

*Opinion*

LAVERY, J. This appeal arises out of two separate actions that were consolidated for trial. In one action, the plaintiff, Darlene A. Chapdelaine, sought a judgment declaring that the defendants, the town of Eastford (town) and its Inland Wetlands and Watercourses Commission (commission), did not have jurisdiction over her activities. In a second action, the plaintiff, Susan Yorgensen, the inland wetlands enforcement officer of the town of Eastford, sought to enjoin certain activities of the defendant Darlene A. Chapdelaine.[1] Chapdelaine, proceeding as a self-represented party, appeals from the trial court's judgment denying her request for a declaratory judgment, and its judgment determining that she conducted activities in violation of General Statutes § 22a-44 (b). On appeal, Chapdelaine claims that (1) the court improperly denied her request for a declaratory judgment, asserting that her claim was jurisdictional in nature; (2) the enforcement complaint was fatally defective because it did not cite § 22a-44 (b); and (3) the court's judgment determining that she violated § 22a-44 (b) was based on factual findings that are clearly erroneous.[2] We affirm the judgments of the trial court.

The following facts and procedural history are relevant to this appeal. On October 1, 2010, Chapdelaine and her partner, Gary Warren, as buyers, entered into a bond for deed and real estate agreement for the subject property with Mary A. Duncan, and her husband, John C. Revill, as sellers.[3] The subject property is located at 211 Eastford Road in Eastford. On October 12, 2010, the town granted Warren a building permit to construct a barn. Shortly thereafter, on October 18, 2010, Yorgensen inspected the property from off-site and saw that work was being performed on the property, including regrading. On November 12, 2010, Yorgensen wrote to Chapdelaine to cease and desist all regulated activities within 100 feet of inland wetlands or watercourses and to submit an application and plan to reclaim and restore the wetlands pursuant to the Eastford Inland Wetlands and Watercourses Regulations (regulations). At a hearing held on November 18, 2010, the commission confirmed the cease and desist order.

On November 30, 2010, Chapdelaine e-mailed Yorgensen indicating that she did not receive the cease and desist order, did not receive the meeting agenda, and that she wished to settle the matter amicably. The next day, Brendan Schain, the attorney for the commission, e-mailed Chapdelaine, indicating that he would instruct the commission not to publish notice of its decision as the matter might be resolved.

Also on November 30, 2010, Chapdelaine filed an amended application with the commission seeking a jurisdictional ruling, asserting that her activities were

either unregulated or constituted farming activities that were exempt from local regulation under General Statutes § 22a-40. Schain e-mailed Chapdelaine explaining the proper procedure for requesting a determination of exempt activity, as well as informing Chapdelaine that notice of the cease and desist order had not yet then published. As detailed in Schain's e-mail: "Just because you consider your property to meet the statutory definition of a farm does not mean that regulated activities can be conducted in the absence of either a permit or a determination of no jurisdiction. An application for a determination of no jurisdiction must include a plan showing the location of wetlands, the location of any fill deposited on the property and the location and nature of any other activities being conducted within the wetlands or upland review area."

On December 6, 2010, again responding to an e-mail from Chapdelaine, Schain reiterated for Chapdelaine that she must submit a map showing the location of wetlands and watercourses, as well as the location and nature of her exempt activities, and that, if she did not, the commission would not be able to take action on her application at its December 16, 2010 meeting. Chapdelaine failed to comply with this request; instead, while Chapdelaine submitted numerous documents, she submitted a site plan of the property that did not delineate wetlands, and she did not supply a written list of the specific activities being performed on the property. At the December 16, 2010 meeting of the commission, Thomas DeJohn, the chairman of the commission, noted that Chapdelaine and the commission had a disagreement as to the process for determining exemption from the regulations, and concluded that the commission could not make a determination on her request without a delineation of the wetlands boundaries. The commission decided to revisit the application at its meeting the following month.

By the date of the following meeting, Chapdelaine had failed to comply with the commission's request for a site map delineating the location of wetlands and watercourses, as well as the location and nature of her exempt activities. On January 27, 2011, the commission determined that, first, Chapdelaine may pursue "equestrian instruction, training, and breeding" and "selective cutting of trees in the woodland area for the purposes of pasture expansion" on the property because they fit within the statutory definition of agriculture and therefore are exempt from the regulations. Nonetheless, as to the remainder of Chapdelaine's activities, the commission determined that it was unable to make a determination as to its jurisdiction. Specifically, the commission determined: "[Chapdelaine] has constructed a riding arena on the northeastern portion of the property. As part of that construction, a large stockpile of topsoil or other material has been placed on the [p]roperty north of the existing dwelling. These

activities have involved the disturbance, grading, filling or removal of soils. If these activities have occurred within the physical area of an inland wetland or watercourse with continual flow, they fall outside the exemption created by . . . § 22a-40 and are therefore subject to the jurisdiction of the [c]ommission. The [c]ommission hereby finds that [Chapdelaine] has submitted an incomplete request for a 'determination of no jurisdiction.' Without a delineation of the wetlands soils and watercourses located on the property by a licensed soil scientist, no determination of the jurisdiction of the [c]ommission is possible. The [c]ommission finds that there is not substantial evidence in the record that the construction of the riding arena and stockpiling of fill on the property have occurred entirely outside the physical limits of inland wetlands or watercourses with continual flow and therefore declines to find these activities exempt from regulation." Notice of the commission's decision was published on February 11, 2011.

Chapdelaine did not appeal the commission's decision that it had insufficient information to determine whether her activities were exempt from the regulations.[4] Instead, in April, 2011, Chapdelaine commenced an action for a declaratory judgment, requesting that the court determine whether the commission had jurisdiction to regulate her activities.

On June 1, 2011, Yorgensen commenced the enforcement action against Chapdelaine alleging, in the first count, that Chapdelaine was in violation of the cease and desist order issued on November 12, 2010, and that despite notice, the violation had not been remedied. In the second count, Yorgensen sought relief under § 22a-44 (b), but did not cite to that statute in the complaint.[5]

The court consolidated the two actions for trial. A trial was held to the court on six days over a period of three months. On January 24, 2013, in a memorandum of decision, the court denied Chapdelaine's request for a declaratory judgment, determining that she failed to exhaust her administrative remedies and, thus, her independent challenge to the commission's jurisdiction was procedurally improper. The court determined that, accordingly, any special defenses raised by Chapdelaine as to the enforcement action that concerned the jurisdiction of the commission also were precluded. As to the enforcement action, the court rendered judgment in favor of Chapdelaine with respect to count one, and in favor of Yorgensen with respect to count two.

Specifically, the court determined that the first count of the enforcement complaint failed because Yorgensen failed to ensure that Chapdelaine had proper notice of the cease and desist hearing, in accordance with the statutory requirements of § 22a-44 (a). As to the second count, however, the court determined Yorgensen established that Chapdelaine violated § 22a-44 (b) because "[t]he testimony . . . is quite clear that Chapdelaine

and Warren performed a regulated activity as defined in § 2.1 of the regulations and without obtaining a permit as required by § 6.1 thereof. Notwithstanding whether or when Chapdelaine and Warren received notice of the cease and desist order, there is no question that they knew the commission sought additional information and could not, at that time, issue the requested jurisdictional ruling without such information. There is also no question that they attended the December and January commission meetings, knew of the request for additional information, did not comply with the request and, in fact, continued working." The court concluded: "Yorgensen's burden was to prove that Chapdelaine and Warren conducted activities within the regulated area without a permit or some clear authority from the commission that their activities were exempt. She . . . succeeded." This appeal followed. Additional facts will be set forth as necessary.

I

First, Chapdelaine challenges the court's denial of her request for a declaratory judgment, claiming that she properly filed an action for a declaratory judgment because her claim was jurisdictional in nature, and the evidence that she presented at trial established that either she did not perform activities within wetlands or her activities were exempt from regulation in accordance with § 22a-40 (a) (1). We disagree.

In its memorandum of decision, the court concluded that the "determination of whether [Chapdelaine's] activities are exempt is, in the first instance, for the commission," citing *Cannata* v. *Department of Environmental Protection*, 215 Conn. 616, 627, 577 A.2d 1017 (1990), *Aaron* v. *Conservation Commission*, 183 Conn. 532, 547, 441 A.2d 30 (1981) (*Aaron II*), *Canterbury* v. *Deojay*, 114 Conn. App. 695, 708, 971 A.2d 70 (2009), and *Wilkinson* v. *Inland Wetlands & Watercourses Commission*, 24 Conn. App. 163, 167–68, 586 A.2d 631 (1991). The court found that "[t]he commission's request that [Chapdelaine] file more information about activities, whether within wetlands or watercourses or outside of those areas that still might impact the river or the wetlands is absolutely proper under Connecticut law. . . . [Chapdelaine] started the process with her initial request for a determination of exempt activities. Her failure to comply with the commission's request is compounded by her failure to appeal the January 27, 2011 decision. She has failed to exhaust her administrative remedies and thus her independent challenge to jurisdiction is procedurally improper." Accordingly, the court denied her request for a declaratory judgment.

Chapdelaine concedes that this case is controlled by *Aaron II*, supra, 183 Conn. 532, but she alleges that her action for a declaratory judgment was proper because the issues that she raised were jurisdictional in nature. See *Aaron* v. *Conservation Commission*, 178 Conn.

173, 178–79, 422 A.2d 290 (1979) (*Aaron I*) ("While exhaustion of administrative remedies is generally held to be applicable to proceedings involving judicial review of administrative agency action, there are certain exceptions to the rule. . . . [O]ne such exception is that resort to administrative agency procedures will not be required when the claims sought to be litigated are jurisdictional. . . . Another exception is that exhaustion of administrative remedies will not be required when the remedies available are futile or inadequate. . . . In the present case there is some question as to whether the plaintiff's claims could properly be litigated by way of appeal because of the rule that a party who seeks some advantage under a statute or ordinance, such as a permit or a variance, is precluded from subsequently attacking the validity of the statute or ordinance." [Citations omitted; internal quotation marks omitted.]). Nonetheless, to support her claim, Chapdelaine details extensively in her brief the evidence that she presented at trial to support her contention that the commission did not have jurisdiction over her activities; namely, that an agent of the Connecticut Department of Agriculture, and an agent of the Connecticut Department of Energy and Environmental Protection, surveyed her property and concluded that her activities fell within the statutory definition of "farming" under General Statutes § 1-1 (q), such that her activities are permitted as of right in accordance with § 22a-40 (a) (1). Further, two soil scientists from the United States Army Corps of Engineers reported that no regulated soils were disturbed.[6]

Chapdelaine's argument is unavailing. Here, Chapdelaine first challenged the commission's jurisdiction before the commission itself. Thereafter, she failed to comply with the commission's requests, and as a result, the commission decided that it had insufficient evidence to make a determination as to its jurisdiction over her activities. Chapdelaine did not appeal that determination, and instead, she started over by bringing a declaratory judgment action. Chapdelaine did not challenge the regulations or the commission's procedures for its determination of jurisdiction; instead, she solely sought a determination from the court that her activities are exempt. *Aaron II* and its progeny are clear that, in Connecticut, the first arbiter of the jurisdiction of a local inland wetlands and watercourses commission is the commission itself, and not a court, because "the administrative requirement that one apply to the commission in order to determine if [her] application is one for an exempt use or operation under § 22a-40 (a) is, in and of itself, valid and is administratively necessary for the commission to discharge its function under the enabling statutes [of the Inland Wetlands and Water Courses Act, General Statutes § 22a-36 et seq.]." *Aaron II*, supra, 183 Conn. 547; see also *Cannata* v. *Department of Environmental Protection*, supra, 215

Conn. 627–29; *Wilkinson* v. *Inland Wetlands & Watercourses Commission*, supra, 24 Conn. App. 164–68. "Specific procedures are set out in the regulations . . . to obtain a determination by the commission that a use is permitted or nonregulated, and one seeking such a determination must first, before undertaking any activity on the property in question, notify the commission of his or her intentions and obtain a written determination by the commission of the categorization of that use. Whether the defendants' [activity] is considered farming for the purposes of § 22a-40 and [the local regulations] is not for [this court] to determine. Such determination must be made by the commission in the first instance. The trial court cannot, nor by extension can we, make a finding that the defendants' actions could be considered farming without the commission first having considered the issue." (Internal quotation marks omitted.) *Canterbury* v. *Deojay*, supra, 114 Conn. App. 708; see also *Cannata* v. *Department of Environmental Protection*, supra, 215 Conn. 628–29.

In particular, we draw Chapdelaine's attention to this court's decision in *Wilkinson*, in which this court held that the wetlands commission must be the first to determine whether it has jurisdiction over a particular subject matter. *Wilkinson* v. *Inland Wetlands & Watercourses Commission*, supra, 24 Conn. App. 167. In *Wilkinson*, like here, the plaintiffs requested that the local wetlands commission issue a declaratory ruling that their proposed activities—namely, constructing a horse barn and indoor riding arena—constituted "farming" and were therefore permitted as of right under § 22a-40 (a) (1). Id., 164–65. In *Wilkinson*, as in the present case, the commission asked the plaintiffs to produce additional information, in particular a site plan sealed by a licensed engineer or surveyor. Id., 165. The plaintiffs in *Wilkinson* did not do this, and instead submitted other materials that they considered to be relevant. As a result, like here, the commission determined that the plaintiffs failed to prove that their proposed activities constituted "farming." Id., 165–66. In response, the plaintiffs in *Wilkinson* appealed to the Superior Court challenging the commission's authority to make such a ruling, and that court agreed, finding that the plaintiffs' proposed activities were farming and, as such, were exempt from the local regulations. Id., 166. The commission appealed, and this court reversed, citing *Cannata*, and determined that: "In the present case, the [local wetlands commission] . . . must be given the first opportunity to determine its jurisdiction. Requiring the plaintiffs to apply for a permit is neither futile nor inadequate. If the [commission] finds that the plaintiff's proposed use is exempt from regulation under . . . § 22a-40 (a) (1), the plaintiffs will be allowed to conduct their activities without a permit. If the commission determines that the plaintiffs' proposed use is not exempt, it must then decide whether to issue a permit.

. . . [T]he plaintiffs in the present case can appeal from an adverse ruling, challenging both the [commission's] jurisdiction and its decision denying them a permit. If, conversely, a permit is granted, the plaintiffs will have received the underlying relief sought, i.e., permission to build horseback riding facilities on the property." *Wilkinson* v. *Inland Wetlands & Watercourses Commission*, supra, 167–68; see also *Cannata* v. *Department of Environmental Protection*, supra, 215 Conn. 628–29.

Accordingly, a party cannot file a declaratory judgment action to circumvent the requests of a wetlands commission to determine its jurisdiction over that party's activities. In the present case, Chapdelaine did not appeal from the commission's determination denying her request for an exemption from the regulations, nor did she appeal from the commission's cease and desist order. "The proper way to vindicate a legal position is not to disobey the orders, but rather to challenge them on appeal." *Inland Wetlands & Watercourses Commission* v. *Andrews*, 139 Conn. App. 359, 364, 56 A.3d 717 (2012). The commission's jurisdiction over Chapdelaine's activities must first be determined by the commission. Accordingly, the court properly denied her request for a declaratory judgment.

II

Second, Chapdelaine claims that Yorgensen should not have prevailed on the second count of the enforcement complaint because she failed to cite § 22a-44 (b) in her complaint. We disagree.

"Because the interpretation of pleadings presents an issue of law, our review is plenary. . . . It is fundamental in our law that the right of a plaintiff to recover is limited to the allegations of [its] complaint. . . . More than a century ago, our Supreme Court held that [w]hen the facts upon which the court in any case founds its judgment are not averred in the pleadings, they cannot be made the basis for a recovery. . . . The vitality of that bedrock principle of Connecticut practice is unquestionable." (Citations omitted; internal quotation marks omitted.) *Michalski* v. *Hinz*, 100 Conn. App. 389, 393, 918 A.2d 964 (2007).

Chapdelaine asserts that Yorgensen should not have prevailed on count two of her complaint because she failed to cite the statute upon which the claim was founded, namely, § 22a-44 (b). She asserts that such a failure of reference, solely, was fatal to count two.

Practice Book § 10-3 (a) provides in relevant part that "[w]hen any claim made in a complaint . . . is grounded on a statute, the statute shall be specifically identified by its number." The enforcement complaint did not cite § 22a-44 (b) as the basis for count two. Contrary to Chapdelaine's assertion, however, this violation of Practice Book § 10-3 (a) is not a complete bar

to recovery on count two. "[O]ur courts repeatedly have recognized that the rule embodied in Practice Book § 10-3 is discretionary and not mandatory . . . [although] notice is the critical consideration in such instances. As this court has observed, [a]s long as the defendant is sufficiently apprised of the nature of the action . . . the failure to comply with the directive of Practice Book § 10-3 (a) will not bar recovery." (Citations omitted; internal quotation marks omitted.) *Michalski* v. *Hinz*, supra, 100 Conn. App. 394.

The record indicates that Chapdelaine was sufficiently apprised of the statutory basis of count two of the enforcement complaint. As asserted by Chapdelaine in her brief: "In the instant matter Chapdelaine continuously argued that [Yorgensen] failed to amend [her] complaint to reflect any of the proper statutes . . . and this was brought to the court's attention numerous times including [Chapdelaine's] testimony and closing argument. . . . [Yorgensen had] fatal flaws in [her] complaint that the trial court could not and should have amended verbally for [her] during trial." Chapdelaine's argument makes it clear that she was aware of the flaw in the complaint, aware of the statute upon which the claim was founded, and aware that the court was to render a judgment on that statute. Furthermore, a review of the record indicates that the court repeatedly stated that it was to make a determination as to Chapdelaine's declaratory judgment action, and, in the enforcement action, on the cease and desist order and the § 22a-44 (b) count. Accordingly, in the present case, Yorgensen's failure to comply with Practice Book § 10-3 (a) properly did not bar recovery as Chapdelaine was sufficiently apprised as to the nature of the action.

### III

Finally, Chapdelaine challenges the court's determination that she violated § 22a-44 (b). Specifically, she asserts that there was no substantial evidence before the court of a violation because (1) she provided substantial evidence to the contrary, and (2) the evidence provided by Yorgensen was not credible. We are not persuaded that the findings of the court were clearly erroneous.

Section 22a-44 (b) provides in relevant part that "[a]ny person who commits, takes part in, or assists in any violation of any provision of sections 22a-36 to 22a-45, inclusive, including . . . ordinances and regulations promulgated by municipalities or districts pursuant to the grant of authority herein contained, shall be assessed a civil penalty . . . . The Superior Court, in an action brought by the . . . municipality . . . or any person, shall have jurisdiction to restrain a continuing violation of said sections, to issue orders directing that the violation be corrected or removed and to assess civil penalties pursuant to this section. . . ."

The court found that Chapdelaine performed a regulated activity, as defined in § 2.1 of the regulations, without obtaining a permit as required by § 6.1 of the regulations. Section 2.1 of the Eastford Inland Wetlands and Watercourses Regulations provides in relevant part that "regulated activity" means "any operation within or use of a wetland or watercourse involving removal or deposition of material, or any obstruction, construction, alteration or pollution, of such wetlands or watercourses . . . . Furthermore, any clearing, grubbing, filling, grading, paving, excavating, constructing, depositing or removing of material and discharging of storm water on the land within 100 feet measuring horizontally from the boundary of any wetland or watercourse is a regulated activity. The Commission may rule that any other activity located within such upland review area or in any other non-wetland or non-watercourse area is likely to impact or affect wetlands or watercourses and is a regulated activity."[7]

The court determined that the evidence established that Chapdelaine performed activities within 100 feet of the wetlands, in violation of § 2.1 of the regulations. Specifically, the court found that "Yorgensen testified that in addition to her on-site visits in the fall of 2010, she has viewed the property from off-site and saw that work was continuing, including a road being built into the woods and regrading. DeJohn, who in addition to being chairman of the commission has also been a general contractor for twenty-eight years, testified that he inspected the site almost daily from both Eastford Road and from the town's nature trail across the river. He also attended the site visit on August 14, 2012. He observed the construction work, which predated the cease and desist order, and watched the 2011 work that commenced in May including the use of heavy equipment through mid-August. DeJohn testified that the activities were conducted in violation of the November 18, 2010 cease and desist order. Michael Klein, a registered soil scientist retained by the [c]ommission, inspected the property on August 14, 2012 and testified to a number of findings including that he found disturbances of soil within 100 feet of a wetland or watercourse, that there was recently deposited sediment in a swale (a possible watercourse), [that] there was grading from the riding ring within twenty or thirty feet from the wetlands, that a portion of the property had been denuded of vegetation, [that] alluvium was present, and that there were disturbances in the southwestern part of the property. Duncan also testified that there has been significant grading and the removal of trees near the river." (Footnotes omitted.)

In her brief, Chapdelaine, first, describes evidence that she presented at trial to support her position that she never violated the regulations. Specifically, she details that the property was never denuded of vegeta-

tion, as exhibited by aerial photographs submitted as evidence, and supported by her own testimony, along with the testimony of Warren and Duncan. She further details that her expert, George Logan, testified that he analyzed the soil on the property at issue and determined that no regulated soils were disturbed.

Second, Chapdelaine details in her brief that the court should not have found the testimony upon which it relied to be credible. Specifically, she details that the testimony of the expert for the plaintiff, Klein, was not credible because he failed to provide a detailed report to support his testimony, he testified that he was unaware of the Connecticut Soil and Erosion Control Guidelines of 2002, he failed to remember the continued education requirements for soil scientists, and he provided blurry photographs. She also details that the testimony of DeJohn was not credible because he only inspected her property from adjacent properties, and did not perform soil analysis such as that performed by her own experts. She also asserts that there was no evidence of filling of the wetlands, and there was no evidence of cutting of trees for expansion of crop land.

"Our review of the factual findings of the trial court is limited to a determination of whether they are clearly erroneous. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . Because it is the trial court's function to weigh the evidence and determine credibility, we give great deference to its findings." (Internal quotation marks omitted.) *Canterbury* v. *Deojay*, supra, 114 Conn. App. 720–21.

Our review of the record indicates that the court's factual findings are supported by the evidence.[8] To the extent that Chapdelaine challenges the credibility of the evidence, and the court's weighing of the evidence, such a determination is outside the scope of our review. As to Chapdelaine's challenge of the court's reliance on Klein's testimony, in particular, we note that "[t]he acceptance or rejection of the opinions of expert witnesses is a matter peculiarly within the province of the trier of fact and its determinations will be accorded great deference by this court. . . . In its consideration of the testimony of an expert witness, the trial court might weigh, as it sees fit, the expert's expertise, his opportunity to observe the defendant and to form an opinion, and his thoroughness. It might consider also the reasonableness of his judgments about the underlying facts and of the conclusions which he drew from them. . . . It is well settled that the trier of fact can disbelieve any or all of the evidence proffered . . . ." (Internal quotation marks omitted.) *Sheppard* v. *Sheppard*, 80 Conn. App. 202, 212, 834 A.2d 730 (2003).

Accordingly, we are not left with a definite and firm conviction that a mistake has been committed.

The judgments are affirmed.

In this opinion the other judges concurred.

[1] In the declaratory judgment action, Chapdelaine named as defendants the town, Yorgensen, and Thomas DeJohn, the chairman of the Inland Wetlands and Watercourses Commission of the Town of Eastford.

In the enforcement action, Yorgensen named as defendants Chapdelaine, Gary Warren, who occupies the property with Chapdelaine, and Mary A. Duncan and John C. Revill, who are the owners of the property. Warren, Duncan, and Revill are not parties to this appeal.

Hereafter, for the sake of clarity, we refer in this opinion to all individuals by name rather than by party designation.

[2] In her brief, Chapdelaine raised seventy-one claims of error. "[I]t is the established policy of the Connecticut courts to be solicitous of [self-represented] litigants and when it does not interfere with the rights of other parties to construe the rules of practice liberally in favor of the [self-represented] party. . . . Although we allow [self-represented] litigants some latitude, the right of self-representation provides no attendant license not to comply with relevant rules of procedural and substantive law." (Citation omitted; internal quotation marks omitted.) *Strobel* v. *Strobel*, 64 Conn. App. 614, 617–18, 781 A.2d 356, cert. denied, 258 Conn. 937, 786 A.2d 426 (2001). "This torrent of claimed error . . . serves neither the ends of justice nor the defendant's own purposes as possibly meritorious issues are obscured by the sheer number of claims that are put before us. . . . Legal contentions, like the currency, depreciate through over-issue. The mind of an appellate judge is habitually receptive to the suggestion that a lower court committed an error. But receptiveness declines as the number of assigned errors increases. Multiplicity hints at lack of confidence in any one [issue]. . . . [M]ultiplying assignments of error will dilute and weaken a good case and will not save a bad one. . . . Most cases present only one, two, or three significant questions. . . . Usually . . . if you cannot win on a few major points, the others are not likely to help. . . . The effect of adding weak arguments will be to dilute the force of the stronger ones." (Citations omitted; footnote omitted; internal quotation marks omitted.) *State* v. *Pelletier*, 209 Conn. 564, 566–67, 552 A.2d 805 (1989); see also *Strobel* v. *Strobel*, supra, 618–19.

The majority of Chapdelaine's claims are allegations that lack factual and legal support. Furthermore, for each claim raised in her statement of issues, she cites for our reference a range of pages that encompasses the entirety of her brief. "[W]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failing to brief the issue properly. . . . Where the parties cite no law and provide no analysis of their claims, we do not review such claims." (Citation omitted; internal quotation marks omitted.) *Turner* v. *American Car Rental, Inc.*, 92 Conn. App. 123, 130–31, 884 A.2d 7 (2005). Accordingly, the three claims addressed in this opinion are those upon which substantive argument can be gleaned from Chapdelaine's brief and oral argument before this court. Those that are not addressed are without merit.

[3] According to the agreement, the closing was to take place on or before August 15, 2012. The property had not closed as of January 24, 2013, the date of the court's judgment.

[4] Chapdelaine stated at trial that she did not appeal the commission's decision because she "was extremely happy." Specifically, she stated that "I was happy with their decision. They gave me the decision to pasture expand. They gave me permission to train." She reiterated this satisfaction and justification as to why she did not appeal the commission's decision at oral argument to this court.

[5] In the enforcement complaint, Yorgensen failed to cite § 22a-44 (a) as the basis for count one, and § 22a-44 (b) as the basis for count two. Instead, she detailed count one as a violation of an unappealed cease and desist order, and count two as a violation of §§ 2.1 and 6 of the regulations. We address why Yorgensen's failure to cite to § 22a-44 (b) did not bar her recovery in part II of this opinion.

[6] Chapdelaine makes various claims that are rooted in her belief that the court impermissibly treated her declaratory judgment action as an appeal, such as her contention that the court lacked a full record for review, because

the case was not brought as an appeal under the Uniform Administrative Procedure Act (UAPA). However, we note for Chapdelaine that the court did not treat her declaratory judgment action as an appeal of the commission's determination; instead, the court held that she *should have* appealed. The UAPA only applies to appeals from the determination of a wetlands commission; *Klug* v. *Inland Wetlands Commission*, 30 Conn. App. 85, 91, 619 A.2d 8 (1993); and as found by the court, and as conceded by Chapdelaine, no such appeal was taken. Instead, this was a consolidation of two separate actions, neither of which was an appeal from the determination of the commission.

[7] Section 6.1 of the Eastford Wetlands and Watercourses Regulations provides that "[n]o person shall conduct or maintain a regulated activity without first obtaining a permit for such activity from the Inland Wetlands and Watercourses Commission of the Town of Eastford." We note that a 100 foot upland review area imposed by a local wetlands regulation has been held to be "a valid administrative device reasonably designed to enable the commission to protect and preserve wetlands located within [the town] in fulfillment of its duty under the [Inland Wetlands and Water Courses Act]." (Internal quotation marks omitted.) *Queach Corp.* v. *Inland Wetlands Commission*, 258 Conn. 178, 201, 779 A.2d 134 (2001).

[8] Notably, the record indicates that Chapdelaine's expert, George Logan, testified that Chapdelaine's construction of the riding arena disturbed soils within 100 feet of the Still River. The following colloquy occurred between Schain, who was Yorgensen's trial counsel, and Logan:

"[Attorney Schain]: Mr. Logan, were soils disturbed during the construction of the riding arena?

"[Logan]: Yeah.

"[Attorney Schain]: And is some of that disturbance within 100 feet of the Still River?

"[Logan]: Yes.

"[Attorney Schain]: And on other areas of the property, there are disturbed soils?

"[Logan]: Well, it depends on how you define disturbed soils.

"[Attorney Schain]: Soils which are—which have been—I'm sorry, allow me to think of another word. Soils which have been upset from their natural state?

"[Logan]: Minimally.

"[Attorney Schain]: And some of that disturbance is within 100 feet of the Still River? . . .

"[Logan]: Yes."