TOWN OF CANTERBURY ET AL. *v.* CHRISTOPHER
DEOJAY ET AL.
(AC 29602)

Beach, Robinson and West, Js.

Argued January 20—officially released June 2, 2009

*Anne R. Hoyt,* for the appellants (defendants).

*Richard S. Cody,* with whom, on the brief, was *Adrienne Russo,* legal intern, for the appellees (plaintiffs).

*Opinion*

ROBINSON, J. The aesthetic pleasure that results from the transformation of a neglected piece of property

into a blueberry farm cannot override the requirements of the state and local zoning regulations. The defendants, Christopher Deojay and Tina Deojay, appeal from the judgment of the trial court enjoining them from performing any further work on their property and imposing a fine, costs and fees. We affirm the judgment of the trial court.

The following facts and procedural history are necessary for our resolution of the defendants' appeal. The defendants purchased property located at 234 North Society Road in Canterbury in October, 2004. Donald Aubrey, the town engineer, testified that the property at that time "was like a jungle, would be the best word in the common language. It was almost impenetrable. You could not see the house to the rear from the road." He also testified that in addition to "the residence in the rear, there was an abandoned house in the front, left-hand corner of the property, some outbuildings primarily, to the right of the driveway there was a tremendous amount of farm debris, implements, a trailer, heavily littered with very heavy secondary growing up through all of that." Christopher Deojay testified that at the time he bought the property, there was a trailer, a house and a residential garage on the property, all of which have since been removed.

On November 5, 2004, Christopher Deojay filed an application for a certificate of zoning compliance with the plaintiff town of Canterbury (town), in which he noted that there were wetlands or watercourses on the property and described the activity to take place on the property as residential in nature. He did not indicate on the application any intention to use the property for agricultural purposes.[1] He testified that he did not

---

[1] Although both Deojays are parties to this appeal, as both were named defendants in the complaint, much of the paperwork was filed in Christopher Deojay's name only. In addition, he testified at trial while Tina Deojay did not, and it appears from the minutes of the meetings of the plaintiff inland wetlands and watercourses commission that he was often present, but it is

mention his intention to conduct farming on the property "because I felt it was exempt."

Steven Sadlowski, one of the plaintiffs in this matter, was the town planner and zoning and wetlands enforcement officer at the time this action was commenced.[2] As part of his duties as the zoning and wetlands enforcement officer, he observed a wetlands area on property owned by the defendants and noticed that a drainage ditch had been dug in the area. Sadlowski notified the defendants in writing on July 20, 2005, that they were in violation of the town's inland wetlands and watercourses regulations (regulations) because such work is considered to be a regulated activity and therefore could not be performed unless permitted by the plaintiff inland wetlands and watercourses commission (commission). In the letter, Sadlowski also asked the defendants to stop any further excavation on the site and invited them to attend the next meeting of the commission to discuss the violation, future plans and remediation of the site.[3]

Sadlowski testified that the defendants did not attend the meeting, possibly due to short notice. On August 2, 2005, the defendants filed an application for a permit to undertake proposed activities on the wetlands, which included "clear out debris, clean out and clear lot, correct drainage problem from previous owner's activity and traverse drainage created by town culvert being [too] high at right corner of lot. Relocate driveway, request to regrade up to road . . . ."

At the August 24, 2005 commission meeting, at which Christopher Deojay was present, he discussed his work

unclear whether she accompanied him to those meetings. When we refer to the defendants, therefore, we mean both Deojays, even though only Christopher Deojay's name may appear on the paperwork in question, unless the facts necessitate that we refer to him separately.

[2] The plaintiffs in this matter are the town of Canterbury, the town's inland wetlands and watercourses commission and Sadlowski.

[3] Sadlowski first took photographs of the property at about that time.

on the property, and the commission suggested that the wetlands area be flagged. The wetlands had not been flagged by the time of the September 28, 2005 commission meeting, and a commission member asked at that meeting that no further excavation be done on the site until the commission approved it.

Sadlowski testified that further activity had occurred on the property after he sent the July 20, 2005 letter; he observed that more trees had been cut down in and around the wetlands. Christopher Deojay admitted that he cut down trees in the wetlands area in 2005; he estimated that there were about thirteen trees in the wetlands area and that he left six of them standing.

The defendants' permit application was denied by the commission at its October 26, 2005 meeting. Sadlowski observed even more trees being cut down after that date.[4] Sadlowski then issued a cease and desist order (order) on January 26, 2006, which stated: "[Y]ou were advised to get the wetlands flagged . . . and [t]o the best of my knowledge you have not had this done . . . yet and it has been over [three] months. Furthermore, it appears more clearing has taken place. Therefore, in order to stop any further damage to the wetlands, we are issuing the following order: You are ordered to Cease and Desist from any further activity on this lot until a new application is submitted to, and approved by, the [commission]."[5] This letter was mailed to the defendants by certified mail on January 26, 2006, and it also informed the defendants that a show cause hearing would be held on February 2, 2006.

At the February 2 meeting, Christopher Deojay stated that he could not flag the wetlands as requested because

---

[4] Sadlowski took more photographs to document the status of the property at that time.

[5] The letter is dated October 4, 2005, but contains a handwritten notation that it should have been dated January 26, 2006, and Sadlowski testified that the October date was a typographical error on his part.

he could not get an accurate delineation of the water running off the road. The commission noted that it could not accept wetlands flagging from anyone other than a licensed soil scientist. Christopher Deojay stated that the allegation in the order that he was continuing to disrupt wetlands soils was not true, and he argued that the order should be lifted because his property was agriculturally exempt. A commission member made a motion to uphold the order with the condition that Christopher Deojay send a letter to the board of selectmen regarding the drainage on the property and that he come before the commission to discuss submitting an application. The motion was passed unanimously. Notice that the order was upheld at the show cause hearing was sent to Christopher Deojay by certified mail on February 9, 2006. The court, in its memorandum of decision, found that no appeal was taken from this action confirming the order.

Christopher Deojay wrote a letter to the board of selectmen dated February 3, 2006, per the commission's request.[6] In the letter, he stated: "My objective is to remedy the property so my well will no longer be impacted by the road salt running onto the property from the street with the water. I do plan on rebuilding the rest of the structures on my lot and residing here in town." He also claimed that the town could be financially liable to remedy the problem caused by the runoff of water from the road onto his property.

Christopher Deojay wrote a letter to the commission dated February 15, 2006, in which he notified the commission of his letter to the board of selectmen, as requested by the commission, and requested a resolution to the water runoff from the town road onto his

---

[6] The minutes of that meeting state: "[Christopher] Deojay needs to send a letter to the Board of Selectmen regarding the drainage. . . . [Commission member Kimberly A.] Kelly stated that the Commission could also write a letter to the Selectmen regarding the issue."

property. He also claimed that upholding the order violated his civil and constitutional rights of ownership and requested that the order be withdrawn immediately. He informed the commission that he could not receive a fair hearing from the commission and would therefore "proceed with [his] original plan for the site as presented" and requested that all commission members and Sadlowski keep away from his property.

At the February 22, 2006 meeting, the commission noted that the defendants had yet to flag the property and suggested that a letter be sent to Christopher Deojay informing him that the wetlands needed to be flagged and a new permit application be submitted within thirty days. On February 27, 2006, Sadlowski wrote to Christopher Deojay, informing him that he needed to have the wetlands area on his property flagged within the next thirty days, after which he could resubmit his application to the commission. The letter acknowledged the problem of runoff water from the road spilling onto the defendants' land but stated that the commission could not allow wetlands to be modified without a permit. Christopher Deojay acknowledged receiving this letter. Sadlowski took photographs of the ditch area on the defendants' property on May 1 and June 1, 2006. The June 1 photographs show that more trees had been cut down since the May 1 photographs were taken.

The plaintiffs filed a two count enforcement action on July 20, 2006, seeking enforcement of the order and an injunction prohibiting the defendants from conducting regulated activities in the wetlands or watercourse on their property, requiring them to remove all fill that was placed on the wetlands or watercourse and requiring them to restore the wetlands and watercourse that had been damaged by their unauthorized regulated activities.

Christopher Deojay filed a second application for a permit to conduct certain activities on his property on August 1, 2006.[7] The application requested permission to construct an agricultural pond, to plant blueberries, to place a shed and to construct a driveway within 100 feet of the wetlands, as well as permission for construction of a house, a well and a septic system. Sadlowski testified that prior to the receipt of this application, the defendants had not expressed any intention to use their property as a farm. The subject of Christopher Deojay's second application was taken up by the commission at their August 23, 2006 meeting, at which Christopher Deojay asserted that he was currently operating a farm on the property and that the agricultural exemption of the regulations should apply.

Aubrey testified that between February and September, 2006, all of the trees in the wetlands area had been removed. In addition, Christopher Deojay testified that during the cease and desist period, he dug a pond on his property, the proposed agricultural pond that he had referred to in his second application. He admitted that he made a conscious effort to proceed with his project despite the cease and desist order but claimed that he believed that the order was relative to the ditch only.

On September 27, 2006, the commission voted to approve the defendants' second application and lift the order with the condition that the defendants post a bond in the amount of $8000 to ensure that the proposed farming activity would actually take place.[8] The court

[7] The court found that the permit application was filed on August 1; although it is dated August 1, the official date stamp notes it as having been received by the commission on August 10, 2006.

[8] The commission sent the defendants notice of their decision on October 3, 2006, and sent a letter to the Norwich Bulletin on the same date requesting that notice of the decision be published.

found that the defendants did not post that bond at any point.

Trial was held before the court on the enforcement action on July 20 and August 29, 2007. The court issued its memorandum of decision on January 10, 2008, and found that "[t]he defendants knowingly and wilfully conducted activities on their property in violation of the wetland regulations. These activities were conducted both before and after the . . . order approved by the commission on February 2, 2006." The court found in favor of the plaintiffs and enjoined the defendants from continuing any work on the property until they posted the security demanded by the commission or otherwise brought themselves into compliance with all regulations and the cease and desist order was withdrawn by the commission. The court further imposed a fine in the amount of $10,000 together with costs, expert witness fees and attorney's fees. This appeal followed. Additional facts will be set forth as necessary.

I

The defendants first claim that the court's decision to deny their request for leave to amend their answer was an abuse of discretion. As the court was within its discretion to refuse to allow an amendment to the pleadings requested more than two months after the completion of trial, we disagree.

The following additional facts are pertinent to the defendants' claim. After the plaintiffs filed the complaint against the defendants on July 20, 2006, the defendants filed an answer on August 1, 2006, that stated only: "Not guilty. Majority of property is 404 exempt. Wetland office requested site plan and wetland [delineation] at last meeting prior to court action [and] information was supplied as of [August 1, 2006] as requested

pending wetland review."[9] On November 13, 2007, approximately two and one-half months after the conclusion of the trial but before the court issued its memorandum of decision, the defendants filed a request for leave to amend, seeking permission to amend their answer to the plaintiffs' complaint to conform the pleadings to the evidence presented at trial.[10] Along with the request, the defendants submitted a proposed amended answer, which responded to each paragraph of the complaint in turn and set forth four special defenses.[11]

The plaintiffs filed an objection to the request on November 28, 2007. In the court's memorandum of decision, the court noted at the outset that the "[r]equest for leave to amend is denied. The court will not consider an amended answer and counterclaims filed more than two months after the conclusion of the trial. This would raise new matters and require additional evidence. The court finds that proposed special defenses first through

[9] The defendants filed two separate but identically worded answers on that date, one under the name of Christopher Deojay and one under the name of Tina Deojay.

[10] The defendants cited no rule of practice in support of their motion. We note that Practice Book § 10-60 (a) provides in relevant part: "[A] party may amend his or her pleadings or other parts of the record or proceedings at any time subsequent to that stated in the preceding section in the following manner:

"(1) By order of judicial authority; or

"(2) By written consent of the adverse party; or

"(3) By filing a request for leave to file such amendment, with the amendment appended, after service upon each party . . . ."

[11] The special defenses set forth in the proposed amended answer were: (1) the order was upheld by the commission with the condition that the commission contact the board of selectmen and the town road foreman about drainage issues, and because the commission never made such contact, the order never took effect; (2) the defendants stopped all conduct which led to the issuance of the order; (3) the defendants' use of their property is agricultural, which is a permitted use as of right under General Statutes § 22a-40 (a) (1) and § 4.1 (a) of the regulations; and (4) because the commission failed to publish notice of its purported decision upholding the order, the period during which the defendants could appeal the decision upholding the order has not passed.

fourth raise issues already before the court. While these requests to amend are denied, the issues presented will be considered."

The standard of review applicable to a court's decision to allow or deny leave to amend is abuse of discretion. "The motion to amend is addressed to the trial court's discretion which may be exercised to restrain the amendment of pleadings so far as necessary to prevent unreasonable delay of the trial. . . . Whether to allow an amendment is a matter left to the sound discretion of the trial court. [A reviewing] court will not disturb a trial court's ruling on a proposed amendment unless there has been a clear abuse of that discretion. . . . It is the . . . burden [of the party that requested the amendment] to demonstrate that the trial court clearly abused its discretion." (Citations omitted; internal quotation marks omitted.) *Wagner* v. *Clark Equipment Co.*, 259 Conn. 114, 128, 788 A.2d 83 (2002). "The factors to be considered include unreasonable delay, fairness to the opposing parties and negligence of the party offering the amendment." (Internal quotation marks omitted.) *Cummings* v. *General Motors Corp.*, 146 Conn. 443, 449–50, 151 A.2d 884 (1959).

"The essential tests are whether the ruling of the court will work an injustice to either the plaintiff or the defendant and whether the granting of the motion will unduly delay a trial." (Internal quotation marks omitted.) *Tornaquindici* v. *Keggi*, 94 Conn. App. 828, 843, 894 A.2d 1019 (2006). "The trial court is in the best position to assess the burden which an amendment would impose on the opposing party in light of the facts of the particular case." (Internal quotation marks omitted.) *Mastrolillo* v. *Danbury*, 61 Conn. App. 693, 696, 767 A.2d 1232 (2001).

The defendants set forth no reason for the delay in filing the motion to amend; instead, their argument as

to why the amendment should have been permitted fifteen months after their original answer was filed and more than two months after the trial's completion centers around the lack of prejudice to the plaintiffs had the amendment been allowed. The plaintiffs do not complain of any prejudice or unfair surprise that would result from permitting the amendment but merely point out that although the defendants' initial answer was filed pro se, they sought to amend their answer well after the completion of trial despite retaining counsel several months before trial. Most compellingly, the plaintiffs assert that "[t]he claims raised in the proposed amendment do not arise from any factual issues raised at trial that were unknown to the defendants prior to trial."

The cases cited by the defendants in support of their position, *State ex rel. Scala* v. *Airport Commission*, 154 Conn. 168, 224 A.2d 236 (1966), and *Ideal Financing Assn.* v. *Labonte*, 120 Conn. 190, 180 A. 300 (1935), although pertaining to posttrial amendments of an answer, both involve much shorter periods of delay than the delay in this case. Furthermore, the court, in its memorandum of decision, stated that although it would not allow the defendants to amend their answer, the amended answer was before the court and that it would consider the issues it presented. There was, therefore, no great injustice done to the defendants by refusing to allow them to amend their answer. We "will not interfere with the decision of a trial court not to permit an amendment unless an abuse of discretion is clearly evident." *Corcoran* v. *Jacovino*, 161 Conn. 462, 471, 290 A.2d 225 (1971). We conclude that there was no such abuse of discretion.

II

The defendants next claim that the court improperly determined that their agricultural use was not exempt

from the regulations. They also claim, as a separate issue, that the court improperly granted an injunction against their continued agricultural use of their property because this use was permitted as of right. We consider both claims together.

## A

Section 4.1 of the regulations provides in part: "The following operations and uses shall be permitted in inlands wetlands and watercourses, as of right: (a) grazing, farming, nurseries, gardening and harvesting of crops and farm pond of three acres or less essential to the farming operation . . . ."[12] Section 4.3 of the regulations provides in part: "All activities in wetlands or watercourses involving filling, excavation, dredging, clear cutting, grading and excavation or any other alteration or use of a wetland or watercourse not specifically permitted by this Section shall require a permit from the Agency . . . ." Finally, § 4.4 of the regulations provides: "To carry out the purpose of this section, any person proposing to carry out a permitted or non-regulated operation or use of a wetland or watercourse that may disturb the natural and indigenous character of the wetland or watercourse shall, prior to commencement of such operation or use, notify the Agency on a form provided by the Agency and provide the Agency with sufficient information to enable the Agency to properly determine that the proposed operation and use is a permitted or non-regulated use of the wetland or watercourse. The Agency or its designated agent shall rule that the proposed operation or use is a permitted or non-regulated use or operation or that a permit is required. Such ruling shall be in writing and shall be made no later than the next regularly scheduled meeting of the Agency following the meeting at which the request was received. The designated agent for the

---

[12] General Statutes § 22a-40 (a) (1) contains identical language.

Agency may make such ruling on behalf of the agency at any time."

The defendants take the position that because an agricultural use is considered to be an as of right use under the regulation, they did not need permission from the commission for their tree cutting, excavation, pond draining and filling and blueberry planting. Specific procedures are set out in the regulations, however, to obtain a determination by the commission that a use is permitted or nonregulated, and one seeking such a determination must first, before undertaking any activity on the property in question, notify the commission of his or her intentions and obtain a written determination by the commission of the categorization of that use.

Whether the defendants' planting of blueberry bushes on their property is considered "farming" for the purposes of General Statutes § 22a-40 and § 4.1 of the regulations is not for us to determine. Such determination must be made by the commission in the first instance. The trial court cannot, nor by extension can we, make a finding that the defendants' actions could be considered farming without the commission first having considered the issue. In a case with similar factual circumstances, in which the plaintiffs alleged that the department of environmental protection could not order them to apply for a permit because their proposed agricultural use was exempt from regulation, the trial court found that it lacked jurisdiction to consider the plaintiffs' claim because they had failed to exhaust their administrative remedies as a result of their never having received a determination by the department regarding whether their proposed use was agricultural and therefore exempt. *Cannatta* v. *Dept. of Environmental Protection*, 215 Conn. 616, 623, 577 A.2d 1017 (1990). Affirming the trial court's judgment, our Supreme Court held that the exhaustion requirement mandates that the agency in question be the first to determine its jurisdiction

and stated: "When a particular statute authorizes an administrative agency to act in a particular situation it necessarily confers upon such agency authority to determine whether the situation is such as to authorize the agency to act—that is, to determine the coverage of the statute—and this question need not, and in fact cannot, be initially decided by a court." (Internal quotation marks omitted.) Id.

Similarly, in *Wilkinson* v. *Inland Wetlands & Watercourses Commission*, 24 Conn. App. 163, 586 A.2d 631 (1991), the plaintiffs initially appealed from a ruling by the Killingworth inlands wetlands and watercourses commission requiring them to apply for a permit, and the trial court rendered judgment finding that the proposed activities constituted farming. Id., 165–66. The commission thereafter appealed to this court. Id., 166. The commission had concluded that the plaintiffs failed to prove that their proposed activities constituted farming because they did not submit all of the required information to the commission for it to make a determination of whether the activity in question was exempt but later reserved its decision on the issue because the plaintiffs had not presented the commission with a sealed site plan as requested. Id., 164–66. This court reversed the judgment of the trial court because the commission had not been given the first opportunity to determine its jurisdiction and upheld the order requiring the plaintiffs to apply for a permit to give the commission the opportunity first to determine whether the plaintiffs' proposed use was exempt from regulation, and, if not, whether to issue a permit. Id., 167–68.

The defendants appear to have been under the mistaken assumption that because § 4.1 of the regulations and § 22a-40 provide that farming is a permitted activity in a wetlands area as of right, they needed no specific determination that their activities constituted farming. This determination, however, is a necessary step, and

the court correctly concluded that "the defendant[s']
use of the property, whether or not it was agricultural,
was not permitted because the defendant[s] did not
comply with § 4.4 of the regulations."

B

The court did not abuse its discretion in enjoining
the defendants' continued activity on the property. Pursuant to General Statutes § 8-12, "[i]f . . . any building,
structure or land has been used, in violation of any
provision of this chapter or of any bylaw, ordinance,
rule or regulation made under authority conferred
hereby, any official having jurisdiction, in addition to
other remedies, may institute an action or proceeding
to prevent such unlawful erection, construction, alteration, conversion, maintenance or use or to restrain,
correct or abate such violation or to prevent the occupancy of such building, structure or land or to prevent
any illegal act, conduct, business or use in or about
such premises. . . ."

Although in general, "[a] party seeking injunctive
relief has the burden of alleging and proving irreparable
harm and lack of an adequate remedy at law"; (internal
quotation marks omitted) *Monroe* v. *Renz*, 46 Conn.
App. 5, 15, 698 A.2d 328 (1997); it is unnecessary for a
zoning enforcement officer to allege and prove irreparable harm and lack of an adequate legal remedy for an
injunction to issue. See *Gelinas* v. *West Hartford*, 225
Conn. 575, 588, 626 A.2d 259 (1993). Section 8-12 presumes that no adequate alternative remedy exists and
that the injury was irreparable, and the town must prove
only that an ordinance or regulation has been violated.
Id. "A prayer for injunctive relief is addressed to the
sound discretion of the court and the court's ruling
can be reviewed only for the purpose of determining
whether the decision was based on an erroneous statement of law or an abuse of discretion." (Internal quotation marks omitted.) *Monroe* v. *Renz*, supra, 15.

Having concluded that the court properly found that the defendants' use of the property was in violation of the regulations, we further conclude that the court properly exercised its discretion in ordering the injunctive relief requested by the plaintiffs to prevent this unauthorized use.

### III

Next, the defendants claim that the court improperly found that the commission had the authority to require them to post a bond to continue work on their property. More specifically, they claim that the commission did not have the authority under General Statutes §§ 22a-36 through 22a-45 or under § 4.4 of the regulations to condition using a property for agricultural purposes, an as of right use, on the posting of a bond or surety. We disagree.

When the commission granted the defendants' second permit application on September 27, 2006, the approval of the application, and the lifting of the order, was conditioned on the posting of a cash bond or letter of credit in the amount of $8000. The defendants have not posted the bond or a letter of credit. Because no bond or letter of credit was ever posted, the order remained in effect, and any further activity on the property was a violation of the order. Indeed, the commission sent the defendants a certified letter on December 21, 2006, which stated: "Due to the activity currently taking place on your property on North Society Road without the proper bonds in place, the [commission] has requested your attendance at [its] meeting on Wednesday, December 12, 2006 . . . ." According to the minutes of the commission's December 12 meeting, a commission member expressed concern that work was taking place on the property when no bond had been put in place. Christopher Deojay stated that the treasurer refused to accept his bond, and it was

explained to him that the town does not accept insurance bonds. The defendants have still not posted a cash bond or letter of credit.

General Statutes § 22a-42a (d) (1) provides in part: "In granting, denying or limiting any permit for a regulated activity the inland wetlands agency, or its agent, shall consider the factors set forth in section 22a-41, and such agency, or its agent, shall state upon the record the reason for its decision. In granting a permit the inland wetlands agency, or its agent, may grant the application as filed or grant it upon other terms, conditions, limitations or modifications of the regulated activity which are designed to carry out the policy of sections 22a-36 to 22a-45, inclusive. Such terms may include any reasonable measures which would mitigate the impacts of the regulated activity and which would (A) prevent or minimize pollution or other environmental damage, (B) maintain or enhance existing environmental quality, or (C) in the following order of priority: Restore, enhance and create productive wetland or watercourse resources. . . ."[13] This section gives the commission explicit authority to place conditions, modifications or limitations on the granting of a permit application and does not attempt to limit such conditions in any way.

The court did not make any findings regarding the propriety of the bond beyond finding that no satisfactory bond or letter of credit was posted. It is the defendants' contention that because farming is an as of right use under the regulations and statutes, the condition of the posting of the bond attached to the approval of their permit application is improper. The defendants again ignore the fact that they never received a determination that their proposed use fell into the category of farming, and so their use of their property was not

---

[13] General Statutes §§ 22a-36a through 22a-45a are collectively known as the Inland Wetlands and Watercourses Act. See General Statutes § 22a-37.

simply an as of right use. Whether a proposed use is an as of right use has no place in the discussion of whether the commission is entitled to condition the approval of a permit application on the posting of the bond.

Conditional approvals of wetlands permit applications have been held permissible by both this court and our Supreme Court. See *Finley* v. *Inland Wetlands Commission*, 289 Conn. 12, 42, 959 A.2d 569 (2008) (listing Supreme Court and Appellate Court cases involving such conditional approvals); *Cioffoletti* v. *Planning & Zoning Commission*, 209 Conn. 544, 561, 552 A.2d 796 (1989) (undertaking statutory analysis and concluding that requirement of performance bond consistent with § 22a-42 [c] because such measure reasonably designed to protect town's wetlands and watercourses), overruled in part on other grounds by *Stafford Higgins Industries, Inc.* v. *Norwalk*, 245 Conn. 551, 582, 715 A.2d 46 (1998) (en banc).

Contrary to the defendants' contention, § 22a-42a gives the commission wide latitude to condition a permit approval on certain actions by the permittee to mitigate the impacts of the regulated activity. In this particular case, it appears that the commission was less concerned with the environmental impact of the defendants' proposed use of their property than with the fact that the defendants might be asserting insincerely that they proposed to use their property for "farming" to circumvent the permit process. The commission imposed the bond in September, 2006, because it was unwilling to take the defendants' word at that juncture that they would be using their property for farming; the commission stated in the notice of action announcing the conditional approval that the bond's purpose was to "restore the wetlands in the event the farming activity is not completed." The commission's decision was not unreasonable, particularly in light of

the fact that it informed the defendants at the time that their bond would be lifted in three years if, at that time, the commission believed that the lot was developed according to the defendants' plan.

Moreover, the defendants did not challenge the condition that they post a bond. Before raising a claim in this court, the defendants were required to exhaust their administrative remedies, and their failure to challenge the condition renders the commission's action final. See *Upjohn Co.* v. *Zoning Board of Appeals*, 224 Conn. 96, 102, 616 A.2d 793 (1992). General Statutes § 8.8 (b) provides that appeals must be filed within fifteen days from the date that notice of the decision was published, and the record indicates that legal notice of the commission's decision conditionally approving the defendants' permit application was published in the Norwich Bulletin on October 3, 2006. An appeal was not taken from the conditional approval of the defendants' application and, as such, they are barred from challenging it now.[14]

## IV

The defendants next claim that the court improperly found that the commission published notice of its decision upholding the order. The defendants do not allege that they did not receive notice of the order but claim that both General Statutes §§ 22a-43 and 8-8 require newspaper publication of an order, and because the

[14] The defendants claimed at oral argument that although no explicit appeal was taken, they raised the issue in the pleadings that they were making an agricultural use of their land, and, therefore, they were not required to file a separate and independent action appealing from the commission's decision. Even if such a procedure was adequate to constitute an appeal, the proceedings to which the defendants refer were related to the order and not to the conditional approval of their application. They may have raised the issue in the pleadings that they were making an agricultural use of their land, but that has no bearing on whether an appeal was taken from the condition that they post a bond for the order to be lifted.

order was never published in a newspaper, it never took effect.[15] We do not agree.

The following facts are relevant to the resolution of the defendants' claim. As noted previously, Sadlowski issued a cease and desist order against the defendants on January 26, 2006, ordering them to stop any further activity on their property until a new permit application was submitted to and approved by the commission. The commission voted to uphold the order at its February 2, 2006 meeting, according to the minutes of the meeting, "with the conditions that a letter is sent to the Board of Selectmen and the Town Road Foreman to address the drainage on North Society Road Map 38, Lots 9 and 9A . . . ." On February 9, 2006, the chairman of the commission sent a certified letter to Christopher Deojay informing him of the commission's decision.[16]

The court found that no appeal was taken from the February 6, 2006 action confirming the order and that

[15] The defendants also raise what appears to be a separate claim, which is framed in their brief as a subset of this issue, that the order never took effect for the additional reason that there is no evidence in the record that the commission complied with its condition of the upholding of the order that a letter be sent to the board of selectmen and the town road foreman. This section contains no analysis of the issue, and we decline to review the claim. "We are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." (Internal quotation marks omitted.) *Stuart* v. *Stuart*, 112 Conn. App. 160, 165 n.2, 962 A.2d 842, cert. granted on other grounds, 290 Conn. 920, 966 A.2d 237 (2009).

[16] The letter stated: "Dear Mr. Deojay: At the show cause hearing on Thursday, February 2, 2006 of the Inland Wetland & Watercourses Commission the following motion passed unanimously: 'The cease and desist order for Map 38, Lots 9 and 9A be upheld with the conditions that a letter is sent to the Board of Selectmen and the Town Road Foreman regarding the drainage on North Society Road and that [Christopher] Deojay come before the commission to discuss submitting an application.' Should you have any questions regarding the above matter, please feel free to contact Steven Sadlowski, Town Planner . . . . Sincerely, John Tetreault, Chairman . . . ."

"[w]hile the commission did not 'publish' its February 2, 2006 meeting in a newspaper, 'publication' was accomplished. 'Publish' and 'publication' are not interchangeable terms as 'publication' is used in . . . § 22a-43 (a)." The court further concluded that "[i]f 'publication' did not occur appeal by the defendant at this time is prevented by . . . § 8-8 (r)."[17]

"Issues of statutory construction raise questions of law, over which we exercise plenary review." (Internal quotation marks omitted.) *Barry* v. *Historic District Commission*, 108 Conn. App. 682, 702, 950 A.2d 1, cert. denied, 289 Conn. 942, 943, 959 A.2d 1008 (2008). When construing a statute, "[o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Internal quotation marks omitted.) *Brown* v. *United Technologies Corp.*, 112 Conn. App. 492, 505, 963 A.2d 1027, cert. granted on other grounds, 291 Conn. 906, 967 A.2d 1220 (2009).

A review of the applicable statutes and their relationship to other statutes reveals no requirement that notice

---

[17] General Statutes § 8-8 (r) provides: "In any case in which a board fails to comply with a requirement of a general or special law, ordinance or regulation governing the content, giving, mailing, publishing, filing or recording of any notice either of a hearing or of an action taken by the board, any appeal or action by an aggrieved person to set aside the decision or action taken by the board on the grounds of such noncompliance shall be taken not more than one year after the date of that decision or action."

of such orders be published in a newspaper to take effect.[18] The defendants claim that § 22a-43, when read in conjunction with § 8-8, requires newspaper publication of the order, without which it will not take effect. Section 22a-43 (a) provides in relevant part: "[A]ny person aggrieved by any regulation, order, decision or action made pursuant to sections 22a-36 to 22a-45, inclusive, by the commissioner, a district or municipality . . . may, within the time specified in subsection (b) of section 8-8, from the publication of such regulation, order, decision or action, appeal to the superior court . . . ." Section 8-8 (b) provides in relevant part: "[A]ny person aggrieved by any decision of a board, including a decision to approve or deny a site plan pursuant to subsection (g) of section 8-3 . . . may take an appeal to the superior court for the judicial district in which the municipality is located. . . . The appeal shall be commenced by service of process in accordance with subsections (f) and (g) of this section within fifteen days from the date that notice of the decision was published as required by the general statutes. . . ." Section 8-8 (b), in making reference to notice "as required by the general statutes," points us to General Statutes § 22a-44 as the place to find the pertinent notice requirements, as it is the section that authorizes the commission to issue cease and desist orders.

Contrary to the defendants' contention, the relevant notice provisions are contained in § 22a-44 (a), and not in §§ 22a-43 and 8-8. Section 22a-44 (a) provides in relevant part: "If the inland wetlands agency or its duly authorized agent finds that any person is conducting or maintaining any activity, facility or condition which is in violation of sections 22a-36 to 22a-45, inclusive,

---

[18] "The obvious purpose of . . . requiring the publication in a newspaper of the decision of a commission, is twofold: (1) [t]o give notice to interested parties of the decision, and (2) to commence the start of the . . . appeal period." *Akin* v. *Norwalk*, 163 Conn. 68, 73, 301 A.2d 258 (1972).

or of the regulations of the inland wetlands agency, the agency or its duly authorized agent may issue a written order, *by certified mail,* to such person conducting such activity or maintaining such facility or condition to cease immediately such activity or to correct such facility or condition. . . ." (Emphasis added.) Section 22a-44 (a) makes no mention of any requirement that such an order be published in a newspaper, as the defendants claim. It merely provides that the agency must issue a written order, by certified mail, to such persons who are being ordered to cease their activities. The commission did just that. Section 22a-43 refers only to "publication" and not to "publication in a newspaper of general circulation" as do other sections of the statutes. See General Statutes §§ 22a-42a (d) (1), 8-3, 8-26 and 8-29.

An examination of § 22a-42a (d) (1) is instructive and sheds light on when the commission is required to publish certain items in a newspaper and whether such a requirement is imposed by § 22a-43. Section 22a-42a (d) (1), which concerns the "granting, denying or limiting [of] any permit for a regulated activity" provides that after the commission makes such a decision regarding a permit application, "[t]he applicant shall be notified of the agency's decision by certified mail within fifteen days of the date of the decision and the agency shall cause notice of their order in issuance, denial, revocation or suspension of a permit to be published in a newspaper having a general circulation in the town wherein the wetland or watercourse lies. In any case in which such notice is not published within such fifteen-day period, the applicant may provide for the publication of such notice within ten days thereafter." Section 22a-42a (d) (1) explicitly requires that notice of the approval, rejection or modification of a permit

application be published in a newspaper.[19] Section 22a-43 contains no such explicit language. Furthermore, § 22a-42a (d) (1) concerns notice only of the commission's decision on permit applications and makes no mention of orders such as the order in question. The commission satisfied the requirements of § 22a-44 by notifying the defendants by certified mail of its decision to uphold the order.

Section 22a-42a shows that when the legislature intends to require that notice of an act of the commission be published in a newspaper, it knows how to do so. Furthermore, the "fundamental reason for the requirement of notice is to advise all *affected parties* of the opportunity to be heard and to be apprised of the relief sought." (Emphasis added; internal quotation marks omitted.) *Jarvis Acres, Inc.* v. *Zoning Commission*, 163 Conn. 41, 47, 301 A.2d 244 (1972). The requirement of publication in a newspaper of general circulation of the approval or rejection of a permit application under § 22a-42a or notice of a public hearing regarding establishing or changing zoning regulations or districts under § 8-3 has a place because presumably people other than the property owners have an interest in knowing that the current use of property in their

---

[19] See also General Statutes § 8-26 (d), which provides in relevant part: "The commission shall approve, modify and approve, or disapprove any subdivision or resubdivision application or maps and plans submitted therewith, including existing subdivisions or resubdivisions made in violation of this section, within the period of time permitted under section 8-26d. Notice of the decision of the commission shall be published in a newspaper having a substantial circulation in the municipality and addressed by certified mail to any person applying to the commission under this section, by its secretary or clerk, under his signature in any written, printed, typewritten or stamped form, within fifteen days after such decision has been rendered. In any case in which such notice is not published within such fifteen-day period, the person who made such application may provide for the publication of such notice within ten days thereafter. Such notice shall be a simple statement that such application was approved, modified and approved or disapproved, together with the date of such action. . . ."

town will or will not be altered. In contrast, the issuance of a cease and desist order logically does not have a similar widespread effect.

V

Next, the defendants claim that the court improperly found that they conducted activities in the wetlands area of their property before and after the order was issued. We disagree.

In its memorandum of decision, the court made the following findings: "Although the facts are disputed, the court finds that the defendants conducted activities in the wetlands both before and after the . . . order. . . . The defendants knowingly and wilfully conducted activities on their property in violation of the wetlands regulations. These activities were conducted both before and after the . . . order approved by the commission on February 2, 2006." Christopher Deojay admitted in writing, in a letter to the chairman of the commission dated February 15, 2006, that he believed that his property was exempt from regulation and that "[t]here is still brush, stumps and concrete on my property that needs to be cleaned up. My inability to continue my work by your orders has created more of an environmental impact and detriment than I could have ever created intentionally. . . . Therefore, I will proceed with my original plan for the site as presented, weather permitting."

"Our review of the factual findings of the trial court is limited to a determination of whether they are clearly erroneous. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . Because it is the trial court's function to weigh the evidence and determine credibility, we

give great deference to its findings." (Internal quotation marks omitted.) *Vernon* v. *Goff,* 107 Conn. App. 552, 557, 945 A.2d 1017, cert. denied, 289 Conn. 920, 958 A.2d 154 (2008).

Our review of the record indicates that the factual findings challenged by the defendants clearly are supported by the evidence. Sadlowski made numerous visits to the defendants' property and documented its various stages of alteration. Christopher Deojay indicated in writing that he intended to ignore the order and to proceed with his original plans for the property, and he testified that he cut down trees in the wetlands area in 2005. He also testified that during the cease and desist period, he dug a pond on his property. He admitted that he made a conscious effort to proceed with his project despite the cease and desist order and, in August, 2006, testified: "I'm continuing [the work] right now." Indeed, Christopher Deojay has shown a continuing unwillingness to cooperate with the commission, to the extent that he testified: "I'm continuing [the work] right now. I've been mowing it on a regular basis. There's blueberries in there, and it's for charitable use. I mean, if you're opposed to that, that's your problem."[20]

The defendants again contend, as a reason why there was insufficient evidence in the record to support the findings that they conducted such activities, that because their agricultural use of their property is permitted as of right, their activities cannot be considered a violation of the regulations or the General Statutes. That has no bearing on their actual claim, however, which is a challenge to the sufficiency of the evidence. Their contention that they did not violate the regulations or the statutes because such activity is permitted

---

[20] Christopher Deojay indicated that he intends to donate all of the proceeds from the blueberry crops to charity, specifically, the children at Quinebaug Valley Regional.

as of right is a challenge to the legal conclusion of the court. This argument is not addressed to the sufficiency of the court's factual findings and, again, is misplaced.

Because we cannot say that the court's factual findings were, as a matter of law, unsupported, incorrect or mistaken, they are not clearly erroneous. We must, therefore, affirm the court's conclusion that the defendants conducted activities in the wetlands both before and after the order was issued.[21]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[21] In their final claim, the defendants contend that the court improperly imposed a fine, costs and fees. This claim also is briefed inadequately and will not be addressed by this court.