******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

# COMMONWEALTH SERVICING GROUP, LLC, ET AL. *v.* DEPARTMENT OF BANKING
## (SC 21011)

Mullins, C. J., and McDonald, D'Auria, Ecker, Alexander and Dannehy, Js.

*Syllabus*

In accordance with this court's decision in *Persels & Associates, LLC* v. *Banking Commissioner* (318 Conn. 652), for purposes of the provision (§ 36a-671c (1)) of the debt negotiation statutes (§§ 36a-671 through 36a-671f) that exempts from certain licensing and registration requirements those attorneys who engage in or offer debt negotiation services as an ancillary matter to such attorneys' representation of clients, there is a rebuttable presumption that such attorneys are engaged in the practice of law and, therefore, fall within the Judicial Branch's exclusive authority to regulate the practice of law.

The plaintiffs, C Co., a national consumer advocate law firm, and S Co., an affiliate of C Co. that provides various administrative support services to C Co., sought injunctive and declaratory relief in the trial court in response to an ongoing administrative enforcement action that the defendant, the Department of Banking, had brought against S Co. for allegedly engaging in debt negotiation activities without a license to do so, in violation of § 36a-671 (b). The defendant moved to dismiss the plaintiffs' action for lack of subject matter jurisdiction, claiming that the plaintiffs had failed to exhaust their administrative remedies. The trial court denied the defendant's motion to dismiss, concluding that the plaintiffs were not required to exhaust their administrative remedies before asking the court to adjudicate whether the *Persels* presumption applied to S Co. On appeal from the denial of its motion to dismiss, the defendant claimed that the Commissioner of Banking should have the exclusive authority to make factual findings and to determine, during the course of an administrative proceeding, whether individuals or entities are engaged in the practice of law for purposes of *Persels*. *Held*:

The trial court properly denied the defendant's motion to dismiss, this court having concluded that the plaintiffs were not required to wait for the Commissioner of Banking to resolve the issue of whether he had the authority, under *Persels*, to enforce the debt negotiation statutes against S Co. before the plaintiffs could seek judicial intervention with respect to that issue.

Although a party generally must exhaust its administrative remedies before seeking judicial intervention, if an agency has no expertise in resolving the issue of whether it has acted in excess of its statutory authority, a party need

not exhaust its administrative remedies prior to challenging the agency's exercise of that authority by seeking declaratory or injunctive relief in the trial court with respect to that issue.

The plaintiffs were not required to exhaust their administrative remedies before seeking injunctive and declaratory relief in the trial court because the Commissioner of Banking did not have the expertise to determine whether the *Persels* presumption applied to S Co. and, if so, whether that presumption could be rebutted.

Specifically, the Commissioner of Banking has expertise in regulating debt negotiation practices and in enforcing the debt negotiation statutes but not in determining whether individuals or entitles are engaged in the practice of law, and, because the applicability of the *Persels* presumption requires resolution of the latter issue, permitting the commissioner to resolve the *Persels* presumption issue would necessarily implicate separation of powers concerns and involve matters outside the purview of his expertise.

Argued December 11, 2024—officially released April 8, 2025

*Procedural History*

Action seeking, inter alia, a judgment declaring that the defendant did not have the authority to regulate the operations of Commonwealth Law Group et al., and for other relief, brought to the Superior Court in the judicial district of Hartford, where the action was withdrawn in part; thereafter, the court, *Sicilian, J.*, denied the defendant's motion to dismiss, and the defendant appealed. *Affirmed.*

*Patrick T. Ring*, assistant attorney general, with whom were *John Langmaid*, assistant attorney general, and, on the brief, *William Tong*, attorney general, for the appellant (defendant).

*Timothy D. Elliott*, pro hac vice, with whom were *Robert M. Frost, Jr.*, and, on the brief, *Amanda M. Zannoni*, pro hac vice, for the appellees (plaintiffs).

*Houston Putnam Lowry* filed a brief for the National Creditors Bar Association et al. as amici curiae.

*Opinion*

D'AURIA, J. In *Persels & Associates, LLC* v. *Banking Commissioner*, 318 Conn. 652, 122 A.3d 592 (2015) (*Persels*), we held that a law firm that provides debt negotiation services is presumed to be engaged in the practice of law and, thus, comes within the Judicial Branch's exclusive authority to regulate the practice of law and falls outside of the statutory authority of the Commissioner of Banking (commissioner) to enforce Connecticut's debt negotiation statutes, General Statutes §§ 36a-671 through 36a-671f.[1] See id., 674–76. The primary question in this interlocutory appeal is whether a law firm and an entity that provides paraprofessional services to the law firm must exhaust their administrative remedies before seeking declaratory and injunctive relief in the Superior Court to adjudicate that threshold issue—whether the commissioner has exceeded his statutory authority by bringing an administrative enforcement action against them.

The plaintiffs, The Law Offices of Amber Florio, PLLC, doing business as Commonwealth Law Group (Commonwealth Law), and Commonwealth Servicing Group, LLC (Commonwealth Servicing),[2] filed the underlying complaint for declaratory and injunctive relief, requesting that the trial court determine whether the administrative enforcement proceeding the commissioner had begun against Commonwealth Servicing exceeded the commissioner's statutory enforcement authority.

---

[1] Our cases interchangeably use the term "jurisdiction" and "statutory authority" to describe the threshold issue of an agency's power to act. For clarity, we refer in this opinion to an agency's threshold power to regulate as its "authority."

[2] Lendah, LLC (Lendah), was a respondent in the contested case and a plaintiff in the underlying complaint for declaratory and injunctive relief. Lendah and the defendant entered into a stipulation resulting in Lendah's withdrawal of its sole claim from the underlying complaint. Accordingly, Lendah effectively has been removed from this case, and this opinion does not refer to it any further.

The defendant, the Department of Banking, moved to dismiss the plaintiffs' complaint on the ground that they had failed to exhaust their administrative remedies because the commissioner, not the court, must first determine the commissioner's own authority to regulate the plaintiffs. On appeal, the defendant claims that the trial court incorrectly denied its motion to dismiss the plaintiffs' complaint. We disagree and affirm the trial court's decision.

Relevant to this appeal are the allegations of the plaintiffs' amended complaint, which we accept as true at this stage of the proceedings, and the following procedural history. Commonwealth Law is a national law firm that represents clients with consumer (primarily credit card) debt by negotiating settlements on their behalf and defending lawsuits filed by creditors. Commonwealth Law's representation of Connecticut clients is directed and supervised by its members, who are licensed attorneys in Connecticut. These attorneys are actively involved in representing Commonwealth Law's clients by handling the client intake, communicating proposed services, reviewing each client's file to ensure that debt negotiation is an appropriate service for the firm to provide, negotiating debt settlements, and regularly contacting clients to provide updates. Commonwealth Law's Connecticut attorneys will, if necessary, defend any actions filed against clients by drafting and filing pleadings, engaging in discovery, and appearing at trial.

Rather than employing its own paraprofessionals, Commonwealth Law outsourced its administrative support services by entering into an agreement with Commonwealth Servicing, a Massachusetts limited liability company. Commonwealth Servicing provides routine administrative and client support services to Commonwealth Law's clients by, for example, fielding and directing incoming calls to Commonwealth Law attorneys,

adding documents and information submitted by the clients into their files, and responding to clients' procedural or administrative questions. Commonwealth Law attorneys supervise and direct the tasks of Commonwealth Servicing's nonattorney personnel. Commonwealth Servicing does not handle debt negotiations; rather, all debt negotiations are handled solely by Commonwealth Law attorneys and its supervised employees.

A former client of Commonwealth Law complained to the defendant, which consequently sent a letter to Commonwealth Servicing, asking it to explain how it was not violating Connecticut's debt negotiation statutes by engaging in debt negotiation without a license. The plaintiffs jointly responded, indicating that Commonwealth Servicing had not violated the debt negotiation statutes because Commonwealth Servicing does not handle debt negotiations for Commonwealth Law clients, and Commonwealth Servicing personnel act under the supervision and direction of Commonwealth Law's attorneys. Therefore, they claimed that Commonwealth Servicing is exempt from the defendant's enforcement of the debt negotiation statutes under *Persels*.

After a two year investigation, the defendant initiated an administrative enforcement proceeding against Commonwealth Servicing by way of a cease and desist order, asserting violations of § 36a-671 (b), which prohibits debt negotiation in Connecticut without a license. The cease and desist order stated that Commonwealth Servicing was not licensed as a debt negotiator, yet it advertised its debt negotiation services on its website and negotiated debt settlements with Connecticut consumers who directly paid Commonwealth Servicing fees for debt negotiation in excess of that allowed pursuant to § 36a-671 (b). The order mandated that Commonwealth Servicing immediately and temporarily cease and desist from further violations, directed it to pay restitution of

all fees paid by debtors who entered into an agreement with the plaintiffs, and threatened to impose civil penalties of up to $100,000. The cease and desist order was effective from receipt until it was set aside, dismissed, or until the effective date of a permanent order.

In response, the plaintiffs brought the underlying action in the trial court, claiming that the defendant had exceeded its statutory authority to regulate debt negotiation under *Persels*, and seeking to enjoin the administrative enforcement proceeding and declaratory relief. Simultaneously, Commonwealth Servicing moved to dismiss or stay the administrative enforcement proceeding on the ground that the defendant and the commissioner lacked the authority to enforce Connecticut's debt negotiation statutes against it. The hearing officer did not act on the motion to dismiss but stayed the administrative enforcement proceeding pending a final decision by the trial court, reasoning that a "stay of the contested case proceedings will avoid potentially confusing or conflicting orders and duplication of efforts by two distinct tribunals."

The defendant moved to dismiss the plaintiffs' complaint in the trial court for lack of subject matter jurisdiction, arguing that the plaintiffs had failed to exhaust their administrative remedies. The defendant argued that Connecticut law does not permit a party to collaterally attack, interfere with, or bypass an administrative proceeding by seeking judicial relief on matters disputed in the administrative proceeding, and that the commissioner must be able in the first instance to determine the scope of his authority to regulate a party. The defendant never has contended that the cease and desist order contained facts that would overcome the *Persels* presumption—a law firm that provides debt negotiation services is presumed to be engaged in the practice of law and is under the exclusive regulation of the Judicial

Branch—and instead maintains that those facts would be discovered and established by way of the administrative enforcement proceeding.

In opposition, the plaintiffs argued that they need not wait until the final resolution of the administrative enforcement action to seek judicial intervention because *Persels* made clear that the Judicial Branch has the exclusive authority to regulate the practice of law, and that the defendant exceeded its statutory authority by ordering Commonwealth Servicing to cease and desist its operations. The court, accepting the plaintiffs' allegations as true,[3] denied the motion, holding that the plaintiffs were not required to exhaust their administrative remedies before requesting that the court adjudicate the applicability of the *Persels* presumption to their business.[4] The defendant filed an interlocutory appeal

[3] The trial court further opined on the merits of the plaintiffs' complaint by stating that the defendant lacked the statutory authority to regulate the plaintiffs because the defendant had failed to present facts to rebut the *Persels* presumption. As we will explain, whether the trial court had subject matter jurisdiction despite the exhaustion doctrine to adjudicate the applicability of the *Persels* presumption is an inquiry distinct from whether the defendant had overcome the *Persels* presumption. Our decision is limited to the trial court's jurisdiction to answer the *Persels* question, and we do not express any opinion as to whether the defendant has established, or will be able to establish after discovery on remand, its authority to regulate the plaintiffs under *Persels*.

[4] As an alternative basis for jurisdiction, the complaint characterized Commonwealth Servicing's declaratory judgment count, in part, as an appeal under General Statutes § 4-183 (a) and (b). Both parties before the trial court understood Commonwealth Servicing's count as both a declaratory judgment action and a purported appeal under § 4-183. The trial court determined that § 4-183 (a) was not satisfied because the commissioner had not rendered a "final decision" but also determined that Commonwealth Servicing had "standing" to appeal under § 4-183 (b) from the commissioner's cease and desist order as a "preliminary" ruling and that " 'postponement of the appeal would result in an inadequate remedy.' " We do not reach the alternative ground as to whether Commonwealth Servicing can use § 4-183 to appeal from the commissioner's order because we ultimately conclude that the trial court has jurisdiction to entertain the plaintiffs' complaint for declaratory and injunctive relief.

in the Appellate Court, and we transferred the appeal to this court. See General Statutes § 51-199 (c); Practice Book § 65-1.

In 2009, the legislature enacted Connecticut's debt negotiation statutes, General Statutes (Supp. 2010) §§ 36a-671 through 36a-671d, to update and increase the power of the commissioner to protect consumers from the hardship caused by the malfeasance of debt negotiation firms. See Public Acts 2009, No. 09-208, §§ 29 through 33; see also *Persels & Associates*, *LLC* v. *Banking Commissioner*, supra, 318 Conn. 655–56. In general, these statutes required a party to obtain from the commissioner a license to provide debt negotiation services to consumers, authorized the commissioner to investigate any debt negotiation transaction and to redress any violations through license revocation or monetary remedies, set the method for charging fees for debt negotiation services, and established contractual protections for debt negotiation consumers. See *Persels & Associates*, *LLC* v. *Banking Commissioner*, supra, 656. The legislature foresaw that the commissioner's regulation of debt negotiation, an area rife with predatory practices and unfairness to consumers, might inevitably include debt negotiation by attorneys. See id., 655–56, 658–59. For this reason, the debt negotiation scheme excepted an "attorney admitted to the practice of law in this state who engages or offers to engage in debt negotiation as an ancillary matter to such attorney's representation of a client . . . ." (Emphasis omitted; internal quotation marks omitted.) Id., 658–59; see General Statutes § 36a-671c.

In *Persels*, we were asked to determine whether the attorney exception to the state's debt negotiation statutes violated the separation of powers provision contained in article second of the constitution of Connecticut. *Persels & Associates*, *LLC* v. *Banking Commissioner*, supra, 318 Conn. 654–55. Pursuant to General Statutes

§ 4-176, a national law firm petitioned the commissioner for a declaratory ruling that it was exempt from the debt negotiation statutes under § 36a-671c. Id., 655. The commissioner, on the basis of the facts pleaded in the declaratory petition, concluded that the law firm did not qualify under the exception, and thus was required to obtain a license and was subject to the commissioner's oversight, because it performed debt negotiation services, including communications with clients and creditors, through paraprofessional employees who were not attorneys. See id., 666–67. The law firm appealed from that ruling to the trial court pursuant to General Statutes § 4-183, and later to this court upon the trial court's dismissal of its administrative appeal, arguing that the attorney exception, as construed and applied by the commissioner, violated the constitutional separation of powers because it unduly interfered with the Judicial Branch's exclusive authority to regulate the practice of law. Id., 654, 667–68.

We began our analysis by recognizing that "the judiciary wields the sole authority to license and regulate the general practice of law in Connecticut"; id., 673; and "[n]o statute can control the judicial department in the performance of its duty to decide who shall enjoy the privilege of practicing law . . . ." (Internal quotation marks omitted.) Id., 671. We explained that "[a]ny attempt on the part of the legislative department to direct what the rules [for attorney admission] shall be, and to determine what qualifications applicants for admission shall possess, transgresses the constitutional power of that department." (Internal quotation marks omitted.) Id., 671–72. Nevertheless, "the judiciary does not exercise exclusive control over attorney conduct insofar as an attorney is not engaged in the practice of law"; id., 673; and "the authority of the legislature to regulate attorney conduct is limited to the entrepreneurial or commercial aspects of the profession of law."

(Internal quotation marks omitted.) Id., 672. Accordingly, the central question in *Persels* was "whether the debt negotiation statutes unduly permit[ted] the commissioner to interfere with the Judicial Branch's regulation of the practice of law and, therefore, violate[d] the separation of powers provision contained in article second of the constitution of Connecticut." Id., 654.

Taking the law firm's allegations as true in the absence of any agency factual findings; id., 668; we held that "the services that the [law firm] provides bear all the external indicia of the practice of law." Id., 674. We explained that "[t]he plaintiff is a law firm; it purportedly enters into retainer agreements through which it expressly purports to provide legal services; and it alleges in the present action that its Connecticut attorneys enter into attorney-client relationships with each Connecticut client. . . . [I]t provides debt negotiation services in the context of consult[ing] with each client about their legal options . . . . [And] [i]f litigation develops, the assigned Connecticut attorney assists the client in preparing answers to complaints and arbitration demands, drafts responses to discovery (if applicable), drafts cease and desist letters to creditors, and, when appropriate, helps the client assert claims against creditors who violate the law on collection practices. . . . [U]nder [the law firm's] business plan, all of these legal services are provided either directly by Connecticut attorneys or by paralegals and other support staff under the direct supervision and control of Connecticut attorneys." (Citations omitted; internal quotation marks omitted.) Id., 674–76. In short, we held that "the debt negotiation services that the [law firm] provides are inextricably bound together with the practice of law by licensed Connecticut attorneys," and, thus, "their regulation falls under the exclusive authority of the Judicial Branch. In their current form, the debt negotiation statutes therefore offend the separation of powers

provision of article second of the state constitution and are unenforceable with respect to Connecticut attorneys engaged in the bona fide practice of law." Id., 676.

We emphasized in *Persels* "that our conclusion that the commissioner lacks the constitutional authority to license and regulate the provision of debt negotiation services as characterized by the [law firm] is predicated on the [law firm's] representation that its employees and affiliates provide such services to Connecticut residents only (1) under the direct supervision and control of licensed Connecticut attorneys, pursuant to rules 5.3 and 5.5 of the Rules of Professional Conduct, and (2) only in conjunction with the bona fide practice of law. If the commissioner were to determine, however, that, in a particular case, the [law firm] or another debt negotiation company was merely using Connecticut attorneys as a front or facade to circumvent the debt negotiation statutes, then there would be no separation of powers problem and the commissioner would not be barred from exercising his full statutory authority." Id., 679.

"Although the separation of powers provision of the state constitution requires that the commissioner presume, for the purposes of § 36a-671c, that a Connecticut attorney who purports to provide debt negotiation services within the context of an attorney-client relationship is actually engaged in the practice of law, that presumption may be overcome where, for example, the commissioner determines that the Connecticut attorney has failed to (1) exercise meaningful oversight over debt negotiation staff, (2) provide any genuine legal advice or other legal services, and/or (3) maintain a bona fide attorney-client relationship with the client. In such cases, the person or persons providing debt negotiation services would not qualify for the attorney exemption." Id., 679–80. In the end, we trusted the Office of Chief Disciplinary Counsel to vigilantly monitor lawyers' activities and to consider the commission-

er's maximum fee schedule when considering whether fees are reasonable, as well as Connecticut attorneys to "remain mindful of the potential ethical pitfalls they may encounter in this area of practice." Id., 680.

The legislature has not amended § 36a-671c since our decision in *Persels*, and neither party asks us to overrule any portion of that decision. The parties agree that, to enforce the debt negotiation statutes against the plaintiffs, the defendant bears the burden of overcoming the *Persels* presumption. The parties dispute, however, whether the plaintiffs must exhaust all of their administrative remedies by waiting until the commissioner's resolution of that issue before seeking judicial intervention. The defendant contends that the commissioner should have exclusive authority to make factual findings and to determine during the course of the administrative action whether a party is engaged in the practice of law, a determination a party may ultimately challenge on appeal to the Superior Court under § 4-183. The plaintiffs contend that they need not wait until the commissioner determines whether he has authority to regulate them before requesting that the trial court adjudicate that issue because any proceeding in the administrative action would violate the constitutional separation of powers. We agree with the plaintiffs.

"[A] trial court lacks subject matter jurisdiction over an action that seeks a remedy that could be provided through an administrative proceeding, unless and until that remedy has been sought in the administrative forum. . . . In the absence of exhaustion of that remedy, the action must be dismissed. . . . [The exhaustion doctrine] relieves courts of the burden of prematurely deciding questions that, entrusted to an agency, may receive a satisfactory administrative disposition and avoid the need for judicial review." (Citation omitted; internal quotation marks omitted.) *Direct Energy Services*, *LLC* v. *Public Utilities Regulatory Authority*,

347 Conn. 101, 146, 296 A.3d 795 (2023). The exhaustion doctrine is "grounded in deference to [the legislature's] delegation of authority to coordinate branches of [g]overnment, that agencies, not the courts, ought to have primary responsibility for the programs that [the legislature] has charged them to administer. . . . Therefore, exhaustion of remedies serves dual functions: it protects the courts from becoming unnecessarily burdened with administrative appeals and it ensures the integrity of the agency's role in administering its statutory responsibilities." (Internal quotation marks omitted.) Id. We exercise plenary review over the trial court's determination that it had subject matter jurisdiction over the plaintiffs' complaint without the need for them to exhaust their administrative remedies. See *Fairchild Heights Residents Assn., Inc.* v. *Fairchild Heights, Inc.*, 310 Conn. 797, 807, 82 A.3d 602 (2014).

Exceptions to the exhaustion requirement are few in number and narrow in scope. One such exception permits a party to seek judicial review if "injunctive relief from an agency decision is necessary to prevent immediate and irreparable harm." (Internal quotation marks omitted.) *Levine* v. *Sterling*, 300 Conn. 521, 528, 16 A.3d 664 (2011); see also *D'Eramo* v. *Smith*, 273 Conn. 610, 616, 872 A.2d 408 (2005). Previously, we have "permitted parties who have not exhausted their administrative remedies to bypass the statutorily mandated appeal route where . . . the appropriateness of jurisdiction is challenged by way of a declaratory judgment action . . . ." (Citations omitted.) *Harwinton Drilling & Engineering Co.* v. *Public Utilities Control Authority*, 188 Conn. 90, 94, 448 A.2d 210 (1982); see also *Farmington Savings Bank* v. *Zoning Board of Appeals*, 189 Conn. 727, 736, 458 A.2d 1151 (1983) (complaint for declaratory or injunctive relief can be maintained when claim is that agency lacks jurisdiction or has exceeded its statutory authority); *Young* v. *Chase*,

18 Conn. App. 85, 91, 557 A.2d 134, (same), cert. denied, 211 Conn. 807, 559 A.2d 1141 (1989). "[D]eclaratory judgment proceedings are appropriate for determining jurisdictional issues or questions . . . while questions concerning the correctness of an agency's decision in a particular case . . . can properly be resolved only by appeal" pursuant to § 4-183. *Aaron* v. *Conservation Commission*, 178 Conn. 173, 178, 422 A.2d 290 (1979). "Where . . . a colorable claim is made that the preliminary investigation is not within the power of [the legislature] to command . . . [i]t then becomes necessary and proper for the trial court to determine, before proceeding further, the authority of [the] administrative agency to act." (Citation omitted; internal quotation marks omitted.) *Heslin* v. *Connecticut Law Clinic of Trantolo & Trantolo*, 190 Conn. 510, 515, 461 A.2d 938 (1983).

This court has narrowed this exception to the exhaustion requirement, holding that, in particular situations, an agency is competent, and must be given the opportunity, to determine its own authority to regulate before a party can challenge the agency's authority in court. See *Cannata* v. *Dept. of Environmental Protection*, 215 Conn. 616, 622–23, 577 A.2d 1017 (1990). We endorsed the "general rule" that "[w]hen a particular statute authorizes an administrative agency to act in a particular situation it necessarily confers upon such agency authority to determine whether the situation is such as to authorize the agency to act—that is, to determine the coverage of the statute—and this question need not, and in fact cannot, be initially decided by a court. . . . [W]hen a party has a statutory right of appeal from the decision of an administrative agency, he may not, instead of appealing, bring an independent action to test the very issue which the appeal was designed to test." (Citation omitted; internal quotation marks omitted.) *Greater Bridgeport Transit District* v. *Local*

*Union 1336*, *Amalgamated Transit Union*, 211 Conn. 436, 439, 559 A.2d 1113 (1989); see also *Payne* v. *Fairfield Hills Hospital*, 215 Conn. 675, 681, 578 A.2d 1025 (1990).

At face value, there is an apparent conflict in our cases applying the declaratory judgment exception, creating some question as to whether our later decisions foreclosing a party's ability to seek declaratory relief implicitly overruled our prior decisions permitting an immediate jump to court. See *Cannata* v. *Dept. of Environmental Protection*, supra, 215 Conn. 622 n.7 (noting conflict between cases and in dicta recognizing that cases, specifically including *Aaron*, may be distinguishable or implicitly overruled); *Board of Education* v. *Commission on Human Rights & Opportunities*, 344 Conn. 603, 621 n.19, 280 A.3d 424 (2022) (same). As explained in this opinion, we do not read our cases as irreconcilable or as prohibiting a trial court in every situation from determining an agency's authority before either a "final decision" of the agency, which would permit an aggrieved party to file an appeal pursuant to § 4-183 (a), or a "preliminary, procedural or intermediate agency action," which would permit an appeal pursuant to § 4-183 (b). See footnote 4 of this opinion. We now clarify that the narrow scope of this exception to the exhaustion requirement applies only when a plaintiff alleges that the agency has acted in excess of its statutory authority, and the determination of the agency's authority does not call for the agency to apply its expertise. A review of our cases narrowing this exhaustion requirement exception is instructive.

In *Cannata*, we considered "whether a court or an administrative agency should decide in the first instance whether an agency has [statutory authority] over a particular subject matter." *Cannata* v. *Dept. of Environmental Protection*, supra, 215 Conn. 617. We held that the trial court properly dismissed the plaintiffs' chal-

lenge to the environmental protection commissioner's statutory authority to adjudicate whether a permit was required to obstruct stream channel encroachment lines because the plaintiffs had failed to exhaust their administrative remedies. See id., 626–28. We held that the question of whether the commissioner had the authority to regulate the placement of obstructions or encroachments within the stream channel lines required the agency's expertise. See id., 627. We reasoned that it is "normally desirable to let the agency" develop a factual record and answer whether it has authority to regulate in "type[s] of situation[s] that [call] for agency expertise. . . . And since agency decisions are frequently of a discretionary nature or require expertise, the agency should be given the first chance to exercise that discretion or to apply that expertise." (Internal quotation marks omitted.) Id., 627.

In line with *Cannata*, we have held that a party must exhaust its administrative remedies when the question of authority calls for an agency's expertise or discretion. See, e.g., *Stepney, LLC* v. *Fairfield*, 263 Conn. 558, 566, 568, 821 A.2d 725 (2003) (exhaustion was required because Commissioner of Public Health had "expertise necessary" and was "uniquely qualified" to determine whether health code regulation was reasonably related to health and sanitation); *Greater Bridgeport Transit District* v. *Local Union 1336, Amalgamated Transit Union*, supra, 211 Conn. 437–38, 439–40 (exhaustion was required because state labor board must adjudicate in first instance whether new employee attendance policy violated collective bargaining agreement). Likewise, we have held that a party need not exhaust its administrative remedies when the question of authority does not call for an agency's expertise or discretion. See, e.g., *Board of Education* v. *Commission on Human Rights & Opportunities*, supra, 344 Conn. 623 (exhaustion was not required because, unlike in *Cannata*,

threshold "claim involve[d] the proper interpretation of state and federal statutory schemes that are not administered by the commission and that this court is equally competent to interpret"); *Payne* v. *Fairfield Hills Hospital*, supra, 215 Conn. 682 (exhaustion was not required prior to bringing challenge to constitutionality of statute because Psychiatric Security Review Board's "expertise in making factual determinations regarding the mental condition of acquittees is . . . of no use in evaluating [that] legal claim").

Accordingly, reading our cases together, we conclude that parties need not exhaust their administrative remedies if the question of the agency's authority is outside of the agency's expertise. It is prudent for an agency to gather facts and to determine its own authority in the first instance when it has the requisite expertise to answer that issue: e.g., the Commissioner of Environmental Protection has expertise on stream channel encroachment. See *Cannata* v. *Dept. of Environmental Protection*, supra, 215 Conn. 626–28. An aggrieved party ultimately can obtain judicial review by appealing from the agency's determination pursuant § 4-183. If an agency has no expertise concerning the threshold question of its authority, however, parties need not exhaust their administrative remedies before challenging the agency's authority by seeking declaratory or injunctive relief from the trial court. Of course, a party is not *required* to immediately seek court relief and may elect to run the course of an investigation or an administrative enforcement action and then contest the agency's authority in a § 4-183 appeal. Nevertheless, a trial court has subject matter jurisdiction to adjudicate claims seeking declaratory and injunctive relief at any time prior to that appeal if the question of the agency's authority does not involve agency expertise.

The issue before us then is whether the plaintiffs should have exhausted their administrative remedies

before filing their complaint seeking declaratory and injunctive relief because the commissioner, rather than the court, has the expertise to determine whether the *Persels* presumption applies to Commonwealth Servicing and, if so, whether the commissioner can rebut the presumption. See *Persels & Associates*, *LLC* v. *Banking Commissioner*, supra, 318 Conn. 679–80. The defendant contends that we expressly indicated that the commissioner should make that threshold determination when we first described the presumption in *Persels*. Specifically, the defendant relies on the portion of our decision providing that, "[*i*]*f the commissioner were to determine . . .* in a particular case, the [law firm] or another debt negotiation company was merely using Connecticut attorneys as a front or facade to circumvent the debt negotiation statutes, then there would be no separation of powers problem and the commissioner would not be barred from exercising his full statutory authority"; (emphasis added) id., 679; and "that presumption may be overcome where, for example, *the commissioner determines* that the Connecticut attorney has failed to (1) exercise meaningful oversight over debt negotiation staff, (2) provide any genuine legal advice or other legal services, and/or (3) maintain a bona fide attorney-client relationship with the client." (Emphasis added.) Id., 680.

We are not persuaded that the language we used in *Persels* compels a conclusion that the commissioner has the expertise to resolve the threshold question of whether the attorney presumption has been overcome. Nor do we conclude that is the appropriate result. Although, in isolation, this language could be read to indicate that the commissioner may resolve the presumption's applicability, a full reading of *Persels* compels a different result. Our principal conclusion in *Persels* was that the commissioner had violated the constitutional separation of powers by interfering with

the Judicial Branch's exclusive regulation of the practice of law. See id., 676–78. Although we did not squarely address the issue, we effectively concluded that the Judicial Branch, not the commissioner, has the expertise to regulate attorney conduct. See id. Permitting the commissioner to adjudicate whether a party is engaged in the practice of law would necessarily violate the constitutional separation of powers, which prohibits the agency from regulating the practice of law. As the trial court aptly noted, "[i]nterpreting *Persels* to permit such actions [by the commissioner] would effectively vitiate the presumption and expose lawyers engaged in debt negotiation and their support staff to the regulatory authority of the [commissioner], subject only to an appeal after their administrative remedies have been exhausted." Indeed, the language we used in *Persels* was consistent with the possibility that a party might defer seeking relief in court immediately, where it would bear the ultimate burden of proof, permitting the commissioner to find facts and to make that threshold determination.

The plaintiffs contend that "[t]he Department of Banking has no experience or expertise in determining what degree of attorney supervision might be adequate or what might constitute a bona fide attorney-client relationship. Such findings are properly made by the Judicial Branch." (Emphasis omitted; internal quotation marks omitted.) We agree. The defendant and the commissioner have expertise in regulating debt negotiation and enforcing Connecticut's debt negotiation statutes. As the defendant represents in its reply brief, "[t]he commissioner has never claimed expertise in regulating the practice of law. But he does have expertise in regulating debt negotiation, which is the subject matter of his contested case." The problem for the defendant is that the threshold inquiry required by the *Persels* presumption pertains exclusively to the practice of law,

not unauthorized debt collection. The question of the commissioner's authority is contingent on the oversight by a law firm over its staff, the legal advice provided, and the existence of a bona fide attorney-client relationship, all of which are issues outside the commissioner's expertise. Given the significant constitutional separation of powers concerns we outlined in *Persels*, a party must be able to immediately resort to court at any time to adjudicate the commissioner's authority, even during an investigation prior to the initiation of a contested case. The plaintiffs need not wait for the commissioner's resolution of that question before seeking judicial intervention.

In the present case, the defendant can seek to complete additional discovery on the factual issues pertinent to that determination under chapter 13 of our rules of practice. In the present case, the defendant had not yet revealed the factual basis for its claimed authority to regulate the plaintiffs when it brought the administrative enforcement action, in opposition to the motion to dismiss, or on appeal.[5] It will nevertheless have the opportunity on remand to develop and present those facts in the trial court before the court rules on the plaintiffs' complaint for declaratory and injunctive relief.

We again emphasize, as we did in *Persels*, that the Judicial Branch has the primary responsibility to regulate debt negotiation undertaken by attorneys as part of the practice of law. See *Persels & Associates*, *LLC* v. *Banking Commissioner*, supra, 318 Conn. 679–80.

---

[5] Prospectively, we encourage the defendant or the commissioner at the outset of an administrative enforcement action to articulate specific facts sufficient to overcome the *Persels* presumption in its initial charging document, whether that be a cease and desist order, a notice of hearing, or otherwise. See generally Regs., Conn. State Agencies § 36a-1-20. This articulation of facts would inform, and potentially obviate, the need for a respondent to seek judicial intervention.

We respect the legislative determination that this is an area rife with the potential for consumer deception and harm, along with the commissioner's efforts to protect this state's citizens by enforcing the legislative enactments. As we noted in *Persels*, the Deputy Chief Court Administrator at the time earnestly asked that the legislature and the commissioner respect the Judicial Branch's authority to regulate attorney conduct and "not unduly encroach on the Judicial Branch's authority to regulate attorney conduct." Id., 662. At the same time, he unequivocally accepted the responsibility of protecting consumers, noting that "[t]he Judicial Branch shares the [department's] concerns regarding the infiltration of debt negotiation firms into our state and the goal of protecting our citizens from unscrupulous tactics used and ineffective services rendered by these unlicensed entities." (Internal quotation marks omitted.) Id. Having undertaken this important function, the courts and the Office of Chief Disciplinary Counsel must vigilantly monitor attorneys' practice of debt negotiation and fully resolve any complaints challenging an attorney's debt negotiation practice. See id., 679–80. Moreover, we continue to trust all attorneys to be mindful of their ethical obligations when engaging in debt negotiation, particularly because deceptive practices are prevalent in that area of practice. See id., 680.

The denial of the defendant's motion to dismiss is affirmed.

In this opinion the other justices concurred.